(Nos. 47036, 47117 cons

FLORENCE K. HANLEY *et al.*, Appellants, v. STANLEY T. KUSPER, JR., County Clerk, *et al.*, Appellees.— CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Appellee, v. STANLEY T. KUSPER, JR., County Clerk, *et al.*, Appellants.

*Opinion filed Sept. 26, 1975.—Rehearing denied Nov. 21, 1975.*

Kirkland & Ellis, of Chicago (Don H. Reuben, Thomas F. Ging, Shane H. Anderson, and Glenn R. Drury, of counsel), for individual appellants.

Concannon, Dillon, Snook & Morton, of Chicago (William R. Dillon, of counsel), for fiduciary appellants.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Deputy State's Attorney, and Lorence H. Slutzky and Paul P. Biebel, Jr., Assistant State's Attorneys, of counsel), for appellees.

Chicago Bar Association, of Chicago, and Illinois State Bar Association, of Springfield (James P. Connelly, John T. Mackay, L. Edward Bryant, Jr., Samuel W. Hunt, Jr., Robert M. Farquharson, William P. Sutter, David F. Sterling, James Zartman, David V. Flynn, and J. Robert Barr, of counsel), *amici curiae*.

Davis & Davis, and Dunn, Brady, Goebel, Ulbrich, Morel and Jacob, both of Bloomington (David Davis IV, Richard T. Dunn and James A. Knecht, of counsel), for *amicus curiae* Corporate Fiduciaries Association of Southern Illinois.

No. 47117.—Appeal from the Circuit Court of Cook County; the Hon. Arthur L. Dunne, Judge, presiding.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Deputy State's Attorney, and Lorence H. Slutzky, David J. Magee, and Paul P. Biebel, Jr., Assistant State's Attorneys, of counsel), for appellants.

Edmund A. Stephan, Robert L. Stern, Wayne W. Whalen, and Robert K. Hagan (Mayer, Brown & Platt, of Chicago, for appellee.

454

Chicago Bar Association, of Chicago, and Illinois State Bar Association, of Springfield (James P. Connelly, John T. Mackay, L. Edward Bryant, Jr., Samuel W. Hunt, Jr., Robert M. Farquharson, William P. Sutter, David F. Sterling, James Zartman, David V. Flynn, and J. Robert Barr, of counsel), *amici curiae.*

Davis & Davis, and Dunn, Brady, Goebel, Ulbrich, Morel and Jacob, both of Bloomington (David Davis IV, Richard T. Dunn and James A. Knecht, of counsel), for *amicus curiae* Corporate Fiduciaries Association of Southern Illinois.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

In these consolidated cases we are asked to reconsider our decisions in *Lake Shore Auto Parts Co. v. Korzen,* 49 Ill.2d 137 (1971), and 54 Ill.2d 237 (1973). In the first of those opinions we considered the interpretation and the validity of article IX-A which was added to the Constitution of 1870. The added article IX-A read as follows:

"Section 1. Notwithstanding any other provision of this Constitution, the taxation of personal property by valuation is prohibited *as to individuals.*"

In our first opinion we examined the interpretive material, rejected some of the interpretations proposed by the parties and concluded, in the language of the resolution adopted by both houses of the General Assembly, that "by the use of the phrase 'as to individuals', this General Assembly intended to mean a natural person, or two or more natural persons as joint tenants or tenants in common." (49 Ill.2d 137, 140.) We then held, relying upon *Quaker City Cab Co. v. Pennsylvania,* 277 U.S. 389, 72 L. Ed. 927, 48 S. Ct. 533 (1928), that the amendment, so interpreted, violated the equal protection clause of the fourteenth amendment of the Constitution of the United States. Mr. Justice Davis dissented. Thereafter, the Supreme Court of the United States granted *certiorari* and

reversed and remanded, holding that subsequent cases had undermined the *Quaker City Cab* case and characterizing that case as "only a relic of a bygone era." 410 U. S. 356, 365, 35 L. Ed. 2d 351, 358, 93 S. Ct. 1001, 1006 (1973).

After the case had been remanded to this court, memoranda were filed by the parties and by the Corporate Fiduciaries Association of Illinois as *amicus curiae* urging further interpretation of the opinions of this court and of the Supreme Court of the United States. In its *per curiam* opinion responding to those requests (54 Ill.2d 237, 239), the court stated:

> "The personal property thus left subject to taxation under article IX-A includes the following categories of ownership: partnerships, limited partnerships, joint ventures, professional associations, and professional service corporations. Trustees and other fiduciaries, whether corporate or not, do not own property as natural persons, and they were not exempted from taxation by article IX-A. Bank stock, like the shares of any other corporation, is exempt only when owned by a natural person or by two or more natural persons as joint tenants or tenants in common."

Mr. Justice Goldenhersh dissented from that portion of the opinion which related to trustees and other fiduciaries. *Lake Shore Auto Parts Co. v. Korzen* (1973), 54 Ill.2d 237, *cert. denied,* 414 U.S. 1039, 38 L. Ed. 2d 329, 94 S. Ct. 539.

No. 47036 is a class action brought on behalf of certain individuals who are described as follows:

> "The plaintiff-beneficiaries include a widow beneficiary of an inter-vivos trust agreement; a widow beneficiary of a testamentary trust; certain minors by their next friend and mother, who are recipients of a court approved award for money damages for the death of their father in a train wreck, held by a corporate fiduciary as guardian of the estates of said minors; a legatee under the Last Will and Testament of a certain deceased whose estate is

"undergoing administration; the trustees are appearing in their various capacities, *i.e.*, as a guardian for the estate of an incompetent, an executor of a deceased's estate, and trustees under various inter-vivos and testamentary trusts."

They allege that they were not parties to or represented as members of any class involved in the prior litigation concerning article IX-A, and that they have made payments of 1971 and subsequent annual personal property taxes under protest. It is their basic contention that article IX-A, properly interpreted, exempts from taxation the personal property of individuals which is held for their benefit by trustees in a fiduciary capacity. The defendants are the county clerk and the county treasurer of Cook County, members of the Board of Appeals of Cook County, and the county assessor. Their motion to dismiss the complaint was granted, and the plaintiffs appealed. The appeal was brought to this court under Rule 302(b).

In No. 47117 the plaintiff, Continental Illinois National Bank and Trust Company of Chicago (the Bank), sought a declaratory judgment that "all trusts, estates, guardianships, conservatorships or custodianships administered by plaintiff be declared exempt from taxation whenever said trust, estate, guardianship, conservatorship or custodianship is maintained for the benefit of natural persons." The defendants in this case are the same as the defendants in No. 47036. The trial court granted a summary judgment in favor of the plaintiff, and the defendants appealed. This case was also taken directly to this court under Rule 302(b), and was consolidated with No. 47036.

The defendants have urged that the court's previous decisions are fully determinative of the present cases under the doctrine of *stare decisis*. It is true that the basic contentions now advanced were before the court in the earlier cases, although perhaps without some embellishments and refinements that are now included. It is also true that the "legislative" materials now emphasized were

before us when those cases were decided. Nevertheless, because of the continuing importance of the question, we have decided to examine once more the interpretive materials and the arguments advanced in favor of a construction of article IX-A that would exempt from taxation all personal property held by trustees for the benefit of individual natural persons.

Senate Joint Resolution No. 30 as originally introduced provided that "the taxation of personal property by valuation is prohibited." The words "as to individuals" were added by amendment before the Joint Resolution was adopted on June 30, 1969. See 49 Ill.2d at 146-48.

The act which governs the proposal and submission of amendments to the Constitution (Ill. Rev. Stat. 1969, ch. 7½, pars. 1 through 12) provides in section 2:

"The General Assembly in submitting an amendment to the Constitution to the electors, shall prepare a brief explanation of such amendment, a brief argument in favor of the same, and the form in which such amendment will appear on the separate ballot as provided *** [in the 'Election Act.'] The minority of the General Assembly, if they so desire, may also prepare a brief argument against such amendment."

The explanation of the amendment, the arguments for and against it, and the form in which the amendment will appear on the separate ballot, are to be filed with the Secretary of State, who is to arrange for their publication in newspapers. In addition, he is also directed to publish in pamphlet form the proposed amendment, the explanation, the arguments for and against, and the form in which the amendment will appear on the separate ballot. He is then required to furnish each board of election commissioners and county clerk with sufficient copies to enable them to mail a copy to every elector. Ill. Rev. Stat. 1969, ch. 7½, pars. 2, 4.

On June 30, 1969, Senate Joint Resolution No. 43 was also adopted by the Senate. It provided for the appointment of a special joint committee to discharge the

duties imposed by the statute. The report of the special joint committees was adopted by the Senate on June 30, 1969. (2 Senate Journal, 1969, at 3535.) The introduction to the report stated:

> "There is submitted herewith the report of your special joint committees appointed pursuant to Senate Joint Resolution No. 43 for the purpose of preparing the explanation, arguments, and form of a ballot on the constitutional amendment to be voted upon by the people at the election to be held on November 10, 1970. The amendment—a proposal to add Article IX-A to the Constitution—(prohibition of taxation of personal property by valuation as to individuals) will be submitted to the people by the action of this General Assembly. The pages which follow present an explanation of the proposed amendment, give the argument in favor of it as seen by the majority of the General Assembly, give the argument against it as seen by a minority of the General Assembly, and present the form in which the ratification issue is to appear before the electorate on the ballot."

The four members of the Committee of the Senate and the three members of the Committee of the House who were charged with "preparing arguments in favor," and the three members of the Committee of the Senate and the three members of the Committee of the House who were charged with "preparing arguments against," were separately identified. The "arguments against" contained the following paragraph:

> "It is discriminatory because it creates a tax liability based on the nature of the ownership of property and not because of the nature of the property itself. *That which is owned by natural persons is exempted from taxes; that which is owned by corporations, trusts, etc., is subject to taxes.* How will this affect a piece of equipment still titled to the original owner, a corporation, while the user makes payments on it? Business interests generally will be at a disadvantage under this amendment." (Italics added.) 2 Senate Journal, 1969, at 3537.

Thereafter, on May 6, 1970, one of the members of the special joint committee of the House under Senate Joint Resolution No. 43, charged with preparing the

arguments against, presented a corrected report which substituted for the sentence italicized above the following:

"That which is owned by or held in a fiduciary capacity for the benefit of natural persons is exempted from taxes; that which is owned by corporations, etc., is subject to taxes."

The corrected report was adopted by the House on May 6, 1970 (House Journal, 1970, at 6316), and concurred in by the Senate on May 7, 1970 (Senate Journal, 1970, at 4205).

Thereafter, on May 19, 1970, the Senate adopted Senate Joint Resolution No. 67, which stated:

"*** that, in adopting Senate Joint Resolution No. 30, which submits to the electors of this State a constitutional amendment prohibiting the taxation of personal property by valuation as to individuals, it was the intention of this General Assembly to abolish the ad valorem taxation of personal property owned by a natural person or by two or more natural persons, and that, by the use of the phrase 'as to individuals', this General Assembly intended to mean a natural person, or two or more natural persons as joint tenants or tenants in common." (Senate Journal, 1970, at 4405.)

The House concurred in Senate Joint Resolution No. 67 on May 29, 1970, by a vote of 84 to 20. House Journal, 1970, at 7145.

These, then, are the materials recited at perhaps tedious length, from which the meaning of the admittedly ambiguous phrase "as to individuals" is to be derived. (We have not discussed the enactment in 1974 of Public Act 78–1250 because we are of the opinion that it contributes nothing of significance to a determination of the meaning of the ambiguous phrase.)

The plaintiffs would have us look only at the statement contained in the minority argument against the amendment which they repeatedly describe as the "Explanation" of article IX-A. But the explanation of the amendment which is required to be printed on the face of the ballot is obviously not the same as the argument

against it, which, under the statute, may be prepared by the minority "if they so desire." In our opinion the court is not justified in relying upon arguments against a proposed constitutional amendment "as seen by the minority," to determine its meaning after adoption. A precedent so holding would be mischievous in the opportunity it would afford a minority to frustrate the purpose of the General Assembly and the voters. We are not aware of any opinion of this court which has countenanced such a reliance.

None of the plaintiffs analyze the meaning of the "Explanation of Amendment" which was printed on the ballot. The key words of that explanation are: "The amendment would abolish the personal property tax by valuation levied against individuals. It would not affect the same tax levied against corporations and other entities not considered in law to be individuals." Personal property taxes had always been "levied against" the trustee, and not against the beneficiary, although the trustee has a lien upon the trust assets for the amount paid. (Ill. Rev. Stat. 1969, ch. 120, pars. 534, 700.) Trustees are not "considered in law to be individuals," and we are unwilling to believe that the General Assembly regarded a tax levied against Continental Illinois National Bank and Trust Company as trustee, under Trust No. 576, for example, as a tax "levied against" an individual.

The plaintiffs also tend to ignore the specific explanation of the phrase "as to individuals" that was contained in Senate Joint Resolution No. 67, which was adopted by both houses of the General Assembly. The fiduciary plaintiffs in No. 47036 would write off Senate Joint Resolution No. 67 as "nothing more than a further attempt by the General Assembly to show, that in submitting Article IX-A to the electorate, the General Assembly intended that the personal property of 'individuals,' however held, was exempt from *ad valorem* taxation." That explanation of the resolution is inadequate; it

ignores the emphasis that was placed upon ownership by "a natural person, or two or more natural persons as joint tenants or tenants in common."

Neither a trustee nor a beneficiary owns property as a natural person does. Like a corporation, a partnership, and an unincorporated association, a trust is an abstraction—a legal creation designed to enable natural persons who own property to achieve results that could not be achieved if they continued to own it as natural persons. The issue in this case is not a moral one, although the Bank quotes Learned Hand's statement that "there is nothing sinister in so arranging one's affairs as to keep taxes as low as possible." (*Commissioner v. Newman* (2d Cir. 1947), 159 F.2d 848, 850-51.) What we are called upon to do here is to define the meaning of the word "individuals" in a context that contrasts the ownership of a natural person with other kinds of ownership.

There is no doubt that a trust is an artificial legal device by which some of the consequences that would ordinarily attach to the ownership of property by a natural person may be avoided. The objective may be to defeat the claims of creditors of the settlor or of the beneficiary (see G. Bogert, The Law of Trusts and Trustees, sec. 244, 246 (2d ed. 1964)), or to avoid income or inheritance taxes (see Bogert, ch. 15; 1 A. Scott, The Law of Trusts, sec. 59 (3d ed. 1967)). It may be in part to conceal actual ownership, as in the case of the land trust (see Bogert, sec. 250) or to secure a more skillful management or greater diversification of investments than an individual owner is able to achieve as a natural person (Bogert, sec. 249). The objective may even be to obtain corporate advantages without incorporation. "The most common type of business trust is that where the owners of a business, or of shares in a business corporation, transfer the property of the business, or all or a large part of the stock, to trustees for themselves." Bogert, sec. 270.40, at 347.

Upon oral argument, the plaintiffs in No. 47036

recognized the impossibility of squaring a business trust (see Weissman, *A New Look at Business Trusts,* 49 Ill. B. J. 744 (1961)) with the provisions of article IX-A, and they reduced the sweep of their claim of exemption to include only what was described as "the garden variety of trust." That restricted claim, however, is not consistent with any of the interpretive materials, or with the basic contention of the plaintiffs—that any property that is held in trust for a natural person as beneficiary is exempted from taxation by article IX-A regardless of the purpose of the trust.

In addition to its reliance upon the contemporaneous extrinsic materials, the brief of the Bank focuses attention upon the words "as to" in the critical phrase "as to individuals." It says: "It is also to be noted that Article IX-A does not in terms prohibit taxing personal property *owned by* individuals. The constitutional phrase 'as to individuals' is broader. The operative words 'as to' suggest that the amendment was designed to prohibit taxes which *affect* individuals which would, of course, include natural person beneficiaries of trust relationships. *** The words 'as to' more clearly require an inquiry into where the burden of the tax lies than language incorporating technical concepts of title which the draftsmen of Article IX-A chose not to employ."

The Bank's suggested construction of the amendment would exempt from taxation the personal property of partnerships and other forms of organization, as well, of course, as the property of corporations. For taxes imposed upon partnerships and corporations obviously *"affect"* individuals. Indeed, there is no tax that does not "affect" individuals. A corporation does not own itself. It is owned by its shareholders, and while different classes of stock may have different rights and one corporation may own stock in another, the ultimate beneficial owners of every corporation are individuals, and it is they who bear the burden of a tax imposed upon the property of the corporation. See *Lincoln National Bank v. Cullerton,* 18

Ill. App. 3d 953, 958-9 (1974).

For the reasons stated, we have again rejected the claim that all personal property held in trust for natural persons is exempt from taxation. Nevertheless, the arguments of the plaintiffs and our review of the interpretive materials and the underlying policy considerations have persuaded us that there are some situations in which property held by fiduciaries can fairly be said to have been intended to be exempted from taxation. Such situations are those in which the natural person who owns the property is prevented by law from dealing with it as a natural person.

When, for example, the ownership of a natural person is terminated by death, the law imposes an involuntary fiduciary relationship during the period of administration. Similarly, the legal inability of an incompetent to manage and dispose of his property requires the appointment of a conservator. A minor's legal disability presents a closer case, for property may be held by a minor in his own name. Nevertheless, the inability of a minor to deal fully and freely with property held in his own name often compels the establishment of a guardianship or custodianship for the minor's property. (See Brennan, *Planning for the Professional Man,* 1963 U. Ill. L.F. 309, 330.) In each of these situations the fiduciary relationship comes into being because the law prevents a particular class of natural persons (heirs or legatees of decedents, incompetents or minors) from exercising property rights that are available generally to other natural persons. These situations, in our opinion, are distinguishable from voluntary fiduciary relationships created to accomplish results that could not be achieved so long as the property is owned by a natural person. To the extent thus indicated, our decision in *Lake Shore Auto Parts Co. v. Korzen,* 54 Ill.2d 237 (1973), is overruled.

As a somewhat collateral proposition, the Bank has argued that the taxes for 1971 and 1972 which were paid

464

by national banks on account of personal property that they held as trustees must be returned because Federal law prior to 1973 precluded State taxation of the intangible personal property of national banks. (National Bank Act, 12 U.S.C.A. sec. 548 (1957).) The statute relied on by the Bank did prohibit the States from levying an intangible personal property tax against a national banking association. The tax involved here, however, was levied against the banks as trustees, and not against the national banking associations as such. The collection of the property tax from assets held by national banks in trust for others did not violate the Federal statute.

In our opinion the decision in the Supreme Court of the United States in *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 35 L. Ed. 2d 351, 93 S. Ct. 1001 (1973), disposes of the contentions of the plaintiffs that article IX-A violates the equal protection clause of the fourteenth amendment to the Constitution of the United States.

The judgments of the circuit court of Cook County are therefore reversed, and the causes are remanded to that court for further proceedings.

*Reversed and remanded.*