(Nos. 49266-67 cons.—

AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO *et al.,* Appellants, v. STANLEY T. KUSPER, County Clerk, *et al.,* Appellees, R. B. ROBINSON, Appellant, v. STANLEY T. KUSPER, County Clerk, *et al.,* Appellees.

*Opinion filed Nov. 30, 1977.—Rehearing denied Jan. 26, 1978.*

Concannon, Dillon, Snook & Morton, of Chicago (William R. Dillon and John B. Dillon, of counsel) and O'Keefe, Ashenden & Lyons (Thomas G. Lyons, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Paul P. Beibel, Jr., Deputy State's Attorney, and Lawrence Halperin, Assistant State's Attorney, of counsel), for appellees.

Sidley & Austin, of Chicago (William H. Avery and J. Robert Barr, of counsel), for *amicus curiae* League of Women Voters of Illinois.

William J. Scott, Attorney General, of Springfield (Imelda R. Terrazino, of Chicago, of counsel), *amicus curiae.*

Pope & Driemeyer, of Belleville (Joseph R. Lowery, of counsel), for *amicus curiae* Southern Illinois Corporate Fiduciaries Association.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

The plaintiffs in these consolidated causes filed class actions in the circuit court of Cook County seeking, *inter alia,* a declaratory judgment that Public Act 78—1250 (Ill. Rev. Stat. 1975, ch. 120, par. 500.21b) is a valid legislative enactment exempting from personal property taxation for 1975 and subsequent years all personal property held by a trustee for the exclusive benefit of a natural person. The trial court dismissed certain counts of each complaint on the grounds that Public Act 78—1250 was unconstitutional because of the failure of the General Assembly to enact a concurrent replacement tax as required by section 5(c) of article IX of the 1970 Constitution of the State of Illinois and that this court's decision in *Hanley v. Kusper* (1975), 61 Ill. 2d 452, was *res judicata* as to other relief sought. Plaintiffs have appealed directly to this court pursuant to Supreme Court Rule 302(a)(1). 58 Ill. 2d R. 302(a)(1).

Public Act 78—1250, which became effective September 10, 1974, added section 19.21b to the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 500.21b). The statute, as so amended, provides in pertinent part:

"Sec. 19. All property described in Sections 19.1 through 19.24 to the extent therein limited, is exempt from taxation. ***

\* \* \*

Sec. 19.21b. All personal property held by a trustee, guardian, conservator, executor, administrator or other fiduciary to the extent held for the exclusive benefit of a natural person."

The principal issue is whether the failure of the General Assembly to concurrently enact a replacement tax renders this exemption unconstitutional as violative of section 5(c) of article IX of the 1970 Illinois Constitution, which provides:

"On or before January 1, 1979, the General Assembly by law shall abolish all ad valorem personal property taxes and concurrently therewith and thereafter shall replace all revenue lost by units of local government and school districts as a result of the abolition of ad valorem personal property taxes subsequent to January 2, 1971. Such revenue shall be replaced by imposing statewide taxes, other than ad valorem taxes on real estate, solely on those classes relieved of the burden of paying ad valorem personal property taxes because of the abolition of such taxes subsequent to January 2, 1971. If any taxes imposed for such replacement purposes are taxes on or measured by income, such replacement taxes shall not be considered for purposes of the limitations of one tax and the ratio of 8 to 5 set forth in Section 3(a) of this Article."

The complaint in cause No. 49266 was filed by seven banks and trust companies against certain taxing officials in Cook County who were responsible for the assessment and collection of personal property taxes in that county. The action was designated as a class action brought by plaintiffs on behalf of themselves and other trustees of "traditional forms of trusts" created by wills and other written instruments for the purpose of holding, conserving and managing trust assets for the benefit of natural persons and also as representatives of the beneficiaries of said trusts. Count I of plaintiffs' second amended complaint included allegations that when the General Assembly

enacted Public Act 78—1250, its members were of the opinion that it was not necessary to concurrently enact a replacement tax for the reason that there had been no loss of revenue to school districts and units of local government in 95 counties which had never assessed trusts for the benefit of natural persons; that the fiduciary class on which a replacement tax would fall could not be delineated, since many trusts for natural persons held assets exempt from personal property taxation under section 21(4) of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 502(4)), which exempts from personal property taxation the shares of capital stock of corporations whose tangible personal property or capital stock is assessed in Illinois; that because of changes in investments, trusts frequently shift from a taxable to a nontaxable status; and that the heaviest burden of a replacement tax would fall on trusts which had not previously been taxed by reason of the exemption contained in section 21(4) of the Revenue Act. Count I further alleged that the exemption contained in section 21(4) of the Revenue Act was preserved by section 5(b) of article IX of the 1970 Illinois Constitution, which provides that "[a]ny ad valorem personal property tax abolished on or before the effective date of this Constitution shall not be reinstated"; and that if the General Assembly had enacted a replacement tax on trusts for the benefit of natural persons, such replacement tax would have constituted the reimposition of a tax abolished prior to the adoption of the 1970 Constitution contrary to the express provisions of section 5(b) of article IX thereof. It was further alleged that by letter dated October 14, 1975, the Director of the Department of Local Government Affairs had ruled that personal property held in trust for the benefit of natural persons was not to be assessed for 1975 and that such ruling was binding on Cook County taxing officials by reason of section 130(3) of the Revenue Act (Ill. Rev. Stat. 1975,

ch. 120, par. 611(3)), which provides in pertinent part that the Department of Local Government Affairs shall "prescribe general rules and regulations, not inconsistent with law, *** which *** shall be binding upon all local assessment officers and shall be obeyed by them respectively until reversed, annulled or modified by a court of competent jurisdiction"; and that contrary to such ruling the defendants had assessed and had attempted to collect *ad valorem* taxes on personal property held by plaintiffs on April 1, 1975, as trustees for the exclusive benefit of natural persons. Plaintiffs prayed that section 19.21b of the Revenue Act be held to exempt from *ad valorem* taxation personal property held by a trustee for the exclusive benefit of a natural person and that the ruling of the Director of the Department of Local Government Affairs not to assess personal property held in trust for the benefit of natural persons be held to be binding on the defendant county taxing officials.

Count II similarly alleged that certain trusts held only shares of stock of companies whose tangible personal property or capital stock had been assessed under the Revenue Act and were therefore exempt from personal property taxation under section 21(4) of that act; that Public Act 78—1250 was valid and constitutional without the concurrent enactment of a replacement tax; that if a replacement tax were enacted with respect to such trusts whose only assets were tax exempt under section 21(4) of the Revenue Act, it would constitute the reimposition, under the guise of a replacement tax, of a tax abolished prior to the adoption of the 1970 Constitution in violation of section 5(b) of article IX thereof. Plaintiffs prayed in count II that section 19.21(b) of the Revenue Act be held constitutional.

Count III sought a declaration that nine specific testamentary and *inter vivos* trusts were exempt from personal property taxation under the authority of this

court's decision in *Hanley v. Kusper* (1975), 61 Ill. 2d 452, due to the fact that the trust imposed involuntary fiduciary relationships under which the beneficiaries were prevented from exercising property rights generally available to other natural persons or under which the beneficiaries, by reason of age or mental or physical incapacity or disability, were unable to exercise such property rights.

Cause No. 49267 is a class action for declaratory judgment brought against the same Cook County taxing officials by plaintiff, R. B. Robinson, on her own behalf and on behalf of the settlors of all irrevocable and revocable trusts created for the benefit of natural persons and on behalf of the beneficiaries of such trusts. Count II of plaintiff's second amended complaint, which is the only count with which we are concerned on this appeal, alleged that plaintiff was the settlor of an irrevocable trust for her son and daughter; that she was a registered voter and had voted at the general election held November 3, 1970, in favor of the proposition to add article IX—A to the 1870 Illinois Constitution, which provided: "Section 1. Notwithstanding. any other provision of this Constitution, the taxation of personal property by valuation is prohibited *as to individuals*"; that prior to voting on said proposition, she had read in full the pamphlet mailed to the electorate pursuant to law and was led to believe that the proposition would exempt from taxation all personal property held in a fiduciary capacity for the benefit of natural persons; that she further believed in subsequently voting favorably on the 1970 Illinois Constitution that section 5(b) of article IX thereof would prohibit the reinstatement of such previously abolished *ad valorem* tax on personal property held in trust for the benefit of natural persons; that in reliance thereon and in the belief that property held in trust for the benefit of natural persons was exempt from personal property taxation, she created an irrevocable trust with herself as settlor for the benefit of her son and

daughter on December 23, 1970; that Public Act 78—1250 adding section 19.21b to the Revenue Act exempted from personal property taxation for 1975 and subsequent years all personal property held by a trustee for the exclusive benefit of a natural person; that notwithstanding the foregoing and notwithstanding the ruling of the Director of the Department of Local Government Affairs dated October 14, 1975, not to assess trusts for the benefit of natural persons, the defendant taxing officials had continued to assess and collect taxes on the personal property held in said irrevocable trust for the benefit of her son and daughter for 1975 and prior years; and that unless article IX—A of the 1870 Illinois Constitution was construed to exempt personal property held in trust for natural persons from *ad valorem* taxation, her right to vote and that of other members of the class she represented would have been unconstitutionally abridged. Various affidavits of members of the General Assembly as to their intent in proposing the addition of article IX—A to the 1870 Constitution were attached to the complaint. Plaintiff prayed that article IX—A of the 1870 Constitution be construed to exempt personal property owned by or held in a fiduciary capacity for the benefit of natural persons from *ad valorem* taxation and that section 19.21b of the Revenue Act be held to exempt from taxation all personal property held by a trustee for the exclusive benefit of a natural person.

The two causes were consolidated for hearing in the trial court. In each cause the defendants filed motions to dismiss the complaints for failure to state a cause of action. In No. 49266, the trial court granted the motion to dismiss count I of plaintiffs' second amended complaint on the ground that Public Act 78—1250 was unconstitutional for failure of the General Assembly to concurrently enact a replacement tax as required by section 5(c) of article IX of the 1970 Constitution and on the further ground that

the memorandum of the Director of the Department of Local Government Affairs dated October 14, 1975, was null and void and not binding on defendants. The motion to dismiss was sustained as to counts II and III on the grounds that the decision of this court in *Hanley v. Kusper* (1975), 61 Ill. 2d 452, was *res judicata.* In No. 49267, the trial court apparently granted some form of relief as to count I, the circumstances of which are not entirely clear. No appeal was taken therefrom, and count I is not involved here. The motion to dismiss count II of plaintiffs' second amended complaint was sustained on all three of the foregoing grounds.

We turn first to the questions raised concerning the constitutionality of Public Act 78—1250. In our opinion, *Elk Grove Engineering Co. v. Korzen* (1973), 55 Ill. 2d 393, is directly in point and is controlling. In that case, the General Assembly passed a law exempting from *ad valorem* taxation all tangible personal property used by the owner exclusively in cultivating, operating or managing a farm or in the business of farming. No concurrent replacement tax was enacted. Upon examination of the provisions of section 5(c) of article IX of the 1970 Constitution and the relevant debates and proceedings of the 1970 constitutional convention relative thereto, we concluded that the provisions of section 5(c) constitute a mandate to the General Assembly to abolish all *ad valorem* taxes on personal property on or before January 1, 1979; that legislation is contemplated and necessary to carry such abolition into effect; that while the Constitution does not require that all such taxes be abolished at the same time, the General Assembly is nevertheless under a continuing duty to effect such abolition by the specified date; that when abolishing *ad valorem* personal property taxes, the General Assembly must concurrently replace all revenue lost by units of local government and school districts by imposing statewide taxes solely on those classes relieved of

the burden of the taxes abolished; and that this latter provision is not self-executing but requires legislation to carry it into effect. We accordingly held that the statute there in question purporting to exempt personal property used in farming from personal property taxation was unconstitutional, since the General Assembly had not imposed a replacement tax as required by section 5(c).

Plaintiffs attempt to distinguish *Elk Grove* on the grounds that in that case the General Assembly was dealing with a class of taxpayers engaged in the "business" of farming where each member of the class owned tangible personal property; where all 102 counties of the State uniformly assessed and collected personal property taxes from those engaged in such business; and where the abolition of such taxes represented an actual loss of revenue to units of local government and school districts in all 102 counties of the State. They urge that the case at bar differs from *Elk Grove* in that Public Act 78—1250 deals with nonbusiness taxpayers, some of which are not subject to personal property taxes by reason of the exemption contained in section 21(4) of the Revenue Act; in that only 7 of the 102 counties in the State assess and collect *ad valorem* taxes on personal property held in trust; and because the abolition of such taxes therefore does not cause any lost revenue in 95 counties. They urge that a statewide replacement tax could not be imposed on all trusts, because to do so as to trusts holding previously exempt property would constitute the reinstatement of a previously abolished tax in violation of section 5(b) of article IX of the 1970 Constitution. They also suggest, as alleged in the complaint, that by reason of the exemptions contained in section 21(4) of the Revenue Act and the fact that trusts are not currently being taxed in 95 counties, any replacement tax imposed on trusts would necessarily cast the heaviest burden on trusts not previously taxed and that for these and other reasons the General Assembly was

unable to determine how to enact a replacement tax and indeed thought it unnecessary to do so. They argue that as a consequence of the foregoing factors, the provisions of section 5(c) as applied to traditional trusts are vague, indefinite and uncertain and therefore violative of the due process and equal protection clauses of the Federal and State constitutions.

We find these arguments to be without merit. At the outset, we cannot concur with the suggestion that the replacement tax provisions of section 5(c) were intended to apply only to business entities. The provision contains no such restrictive language, and we find no justification for so construing it. Furthermore, the fact that *ad valorem* taxes on personal property held by trusts are being assessed in only seven counties of the State does not, in our opinion, alter or limit the General Assembly's obligation to enact a replacement tax affecting all trusts on a statewide basis. The fact is that nonexempt personal property held by trustees is subject to *ad valorem* taxation in all counties of the State. All trusts are to that extent subject to the burden of such taxes, and the school districts and units of local government in those counties will lose potential revenues to the extent those taxes are abolished. Upon abolition of such taxes, we can see no constitutional prohibition against imposing a replacement tax on all trusts thus relieved of the burden, including those which were previously subject to the tax but which were not taxed due to the failure of local taxing officials to assess nonexempt property held by trustees. Also, the fact that some trusts hold property previously exempt from *ad valorem* personal property taxation and the fact that trust assets change from time to time does not, in our view, render the imposition of a statewide replacement tax totally impossible as suggested by the plaintiffs. It is neither necessary nor appropriate in this case to decide the question of the extent to which a replacement tax may be

imposed on trusts which hold assets which were previously exempt from personal property taxation. For this reason, we cannot agree with the argument that any replacement tax must necessarily fall heaviest on those trusts previously exempt from tax. We must furthermore disagree with the contention that the provisions of section 5(c) as applied to traditional trusts are unconstitutionally vague, indefinite and uncertain. In our opinion, the *Elk Grove* decision is determinative, and we accordingly find that the trial court in both cases correctly held Public Act 78—1250 to be unconstitutional for failure of the General Assembly to concurrently enact a replacement tax as required by section 5(c) of article IX of the 1970 Constitution.

The other allegations of the complaints filed by the plaintiffs in each of these causes involve article IX—A of the 1870 Constitution, which was approved by the voters on November 3, 1970, and which provides: "Notwithstanding any other provision of this Constitution, the taxation of personal property by valuation is prohibited *as to individuals.*" The scope of that provision is still pertinent under the 1970 Constitution by virtue of section 5(b) of article IX, which prohibits the reinstatement of any *ad valorem* personal property tax abolished on or before the effective date of the 1970 Constitution and section 5(c) of that article, which, as previously discussed, requires the imposition of a replacement tax for personal property tax abolished after January 2, 1971.

The appeals now before us mark the third occasion on which we have been asked to construe article IX—A of the 1870 Constitution as applied to fiduciaries. In *Lake Shore Auto Parts Co. v. Korzen* (1971), 49 Ill. 2d 137, we concluded that, by use of the phrase "as to individuals," the General Assembly intended to abolish the *ad valorem* taxation of personal property owned by a natural person, or two or more natural persons as joint tenants or tenants in common. We further held that the article, as so

interpreted, violated the equal protection clause of the fourteenth amendment of the Federal Constitution. The Supreme Court of the United States granted *certiorari* and reversed and remanded, holding that there was no constitutional infirmity in the article. (410 U.S. 356, 35 L. Ed. 2d 351, 93 S. Ct. 1001.) On remand, we considered memoranda filed by the parties and by the Corporate Fiduciaries Association of Illinois urging particular interpretations of article IX—A. In response thereto, this court stated:

> "The personal property thus left subject to taxation under article IX—A includes the following categories of ownership: partnerships, limited partnerships, joint ventures, professional associations, and professional service corporations. Trustees and other fiduciaries, whether corporate or not, do not own property as natural persons, and they were not exempted from taxation by article IX—A." 54 Ill. 2d 237, 239.

Mr. Justice Goldenhersh dissented from that portion of the opinion relating to trustees and other fiduciaries. In *Hanley v. Kusper* (1975), 61 Ill. 2d 452, this court was asked to reconsider our prior decisions in the *Lake Shore* cases. We note that six of the seven plaintiffs in cause No. 49266 now before us were also plaintiffs in *Hanley* and were also designated as members of the Corporate Fiduciaries Association of Illinois in the *amicus curiae* brief filed in the *Lake Shore* case. In *Hanley,* the plaintiffs urged that article IX—A should be interpreted to exempt from taxation personal property held by trustees and other fiduciaries for the benefit of natural persons. After extensive review of various interpretive materials, including the legislative history as reflected by Senate and House journals, the pamplet provided to voters describing the proposed article with arguments for and against it, and the "Explanation of Amendment" which was printed on the ballot, we reached the following conclusions:

"For the reasons stated, we have again rejected the claim that all personal property held in trust for natural persons is exempt from taxation. Nevertheless, the arguments of the plaintiffs and our review of the interpretive materials and the underlying policy considerations have persuaded us that there are some situations in which property held by fiduciaries can fairly be said to have been intended to be exempted from taxation. Such situations are those in which the natural person who owns the property is prevented by law from dealing with it as a natural person.

When, for example, the ownership of a natural person is terminated by death, the law imposes an involuntary fiduciary relationship during the period of administration. Similarly, the legal inability of an incompetent to manage and dispose of his property requires the appointment of a conservator. A minor's legal disability presents a closer case, for property may be held by a minor in his own name. Nevertheless, the inability of a minor to deal fully and freely with property held in his own name often compels the establishment of a guardianship or custodianship for the minor's property. [Citation.] In each of these situations the fiduciary relationship comes into being because the law prevents a particular class of natural persons (heirs or legatees of decedents, incompetents or minors) from exercising property rights that are available generally to other natural persons. These situations, in our opinion, are distinguishable from voluntary fiduciary relationships created to accomplish results that could not be achieved so long as the property is owned by a natural person. To the extent thus indicated, our

decision in *Lake Shore Auto Parts Co. v. Korzen,*
54 Ill. 2d 237 (1973), is overruled." 61 Ill. 2d
452, 463.

Although their approach is somewhat different, the
plaintiffs in these consolidated appeals are again asking for
a reconsideration of the conclusions reached in the *Lake
Shore* and *Hanley* cases with respect to the taxability of
personal property held by a fiduciary. In No. 49266, the
plaintiffs seek a declaratory judgment that nine specific
trusts are exempt from personal property taxation under
article IX—A of the 1870 Constitution. We consider it
unneccessary to describe each of the trusts in detail. It
suffices to note that they were either testamentary trusts
or *inter vivos* revocable or irrevocable trusts created by a
settlor for the benefit of himself and others. Plaintiffs
point out that in *Hanley* it was indicated that personal
property held in a decedent's estate during the period of
administration would not be subject to personal property
taxation, since the decedent's ownership of such property
had been terminated by death and the law imposed an
involuntary fiduciary relationship during the period of
administration. They argue that under the rationale of the
*Hanley* decision, all testamentary trusts should also be
exempt from personal property taxation since they come
into existence by the involuntary act of the death of the
testator, and the beneficiaries of such trusts are as much
prevented by law from dealing with the assets of the trust
as a natural person during the period of the administration
of the trust as they are during the period of administration
of the decedent's estate. Likewise, they argue that trusts in
which a minor or incompetent becomes a beneficiary after
creation of the trust should also be considered exempt in
view of the legal inability on the part of the beneficiary to
deal with the property as a natural person. We find no
merit in these and the other related arguments advanced
by plaintiffs in this regard. While a decedent has little or

no choice with respect to the creation of a fiduciary relationship during the period of administration of his estate with respect to property owned by him at his death, a testator most definitely can determine whether such assets are thereafter to be left outright to the objects of his bounty or to be held in trust for such beneficiaries. It is apparent that each of the trusts set forth in the complaint are voluntary fiduciary relationships created by a settlor or testator to accomplish results that could not be achieved if the property was owned by a natural person. None of the trusts involved situations where property held in the name of a natural person was subjected to an involuntary fiduciary relationship on account of that person's minority, incompetency or death which rendered him unable to deal with his property as a natural person. The *Hanley* decision is dispositive of the issues raised in count III of plaintiffs' complaint in No. 49266, and we conclude that the trial court correctly allowed the defendants' motion to dismiss that count.

Count II of plaintiff's amended complaint in No. 49267 involves essentially the same questions previously raised in *Hanley* with regard to the intent of the General Assembly when it proposed article IX—A and the content of the informational pamphlet concerning the proposed amendment which was mailed to the electorate prior to the referendum thereon. It is unnecessary to reexamine these matters here. We did not then and we do not now agree with plaintiff's argument that the information given to voters prior to the referendum on article IX—A was false and misleading, and we likewise find no merit in the allegations that her right to vote would be unconstitutionally abridged unless article IX—A is construed in the manner she proposes. We accordingly hold that the trial court did not err in granting defendants' motion to dismiss count II of plaintiff's second amended complaint in cause No. 49267.

The final issue raised by the pleadings in each case concerns the validity of the memorandum of October 14, 1975, issued by the Director of the Department of Local Government Affairs advising county taxing officials throughout the State "that personal property held by any fiduciary for the benefit of a natural person, including personal property held under a voluntary fiduciary arrangement, not be assessed for 1975." For the reasons stated earlier in this opinion, we conclude that the advice contained in that memorandum is inconsistent with law and not binding on local taxing officials. The trial court correctly so held.

Accordingly, the judgments of the circuit court of Cook County are affirmed.

*Judgments affirmed.*