**Shirlee MALAND, as personal representative of the Estate of Thilmer J. Maland, Relator,**

v.

**The COMMISSIONER OF REVENUE, Respondent.**

No. C4–82–927.

Supreme Court of Minnesota.

April 1, 1983.

Frundt, Frundt & Johnson, Charles K. Frundt and Brian D. Roverud, Blue Earth, for relator.

Hubert H. Humphrey, III, Atty. Gen., and James W. Neher, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

YETKA, Justice.

This case comes from an appeal to the Minnesota Tax Court of an order of the Commissioner of Revenue, claiming a balance due on the inheritance tax return of relator's husband, Thilmer J. Maland. At issue is the marital exemption of Minn.Stat. § 291.051, subd. 1 (1978) formerly available to spouses of deceased residents, but not to spouses of deceased non-residents. The relator, Shirlee Maland, claimed the distinction was unconstitutional.

The case was heard on stipulated facts. The court held that the denial of the statutory exemption to spouses of non-residents violated neither the Privileges and Immunities Clause nor the Equal Protection Clause and was constitutional. Relator appeals. We affirm.

Relator's spouse was a Colorado resident who died in November 1978, leaving all his real and personal property to relator. This included an undivided one-half interest in real estate in Minnesota. Relator claimed the marital deduction provided in Minn. Stat. § 291.051, subd. 1 (1978) and paid $1,729.10 as the inheritance tax on the transfer of the real property. Respondent, pointing out that the statute does not provide the exemption to non-residents, claims an additional $1,967.54, plus interest.

The issue raised is: Does denial of the marital exemption under Minn.Stat. § 291.-051, subd. 1 (1978) to a spouse of a non-resident decedent violate the Privileges and Immunities Clause of the United States Constitution? U.S. Const. art. IV, § 2, cl. 1. The clause provides: "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

The applicable Minnesota statute is Minn. Stat. § 291.051, subd. 1 (1978), providing in relevant part as follows:

291.051 MARITAL EXEMPTION TAX.

Subdivision 1. Definitions. For the purposes of this section, the terms defined in this subdivision shall have the meaning given them herein.

"Marital exemption" means 50 percent, but not more than $250,000, of the net taxable value passing to the surviving spouse of a decedent domiciled in Minnesota at the time of his death.

Minnesota does not take into account the value of the non-resident's entire estate in computing the graduated tax rate applicable to the property taxable in Minnesota. In addition, under the inheritance tax law in effect during the time period relevant here, non-resident estates having a value of $120,000 or less for Minnesota tax purposes received the same $60,000 spousal exemption as did resident estates. Minn.Stat. § 291.05(3)(i) (1978). The only qualification was that the $60,000 exemption for non-resident estates be reduced by any spousal exemption allowed in the decedent's state of residence. Minn.Stat. § 291.08(c) (1978).

As an alternative election to Minn.Stat. § 291.05(3)(i) (1978), Minn.Stat. § 291.051, subd. 1 (1978) provides that the spouse of a resident decedent is entitled to a marital exemption of 50%, but not more than $250,-000, of the net taxable value of property passing to the surviving spouse. This deduction is unavailable to spouses of non-resident decedents. This statute has been amended several times since 1978. At present, the spouses of non-resident decedents dying on or before December 31, 1981, do receive an exemption, but one smaller than that for spouses of residents where the estate is less than $500,000 in value. It is not disputed that for decedents who die after January 1, 1982, the disparity of treatment between resident and non-resident decedents no longer exists. Minn.Stat. § 291.051 (1982), Act of March 22, 1982, ch. 523, art. XXVI, §§ 4, 8, 1982 Minn.Laws 686, 844, 846.[1]

Relator argues that the statute violates the Privileges and Immunities Clause. We disagree. While the statute, at first glance, would appear to pose a problem, a more

---

1. The convoluted history of the marital exemption is indicative of the difficulties inherent in applying our state inheritance tax. One might even ask if state death taxes are ever justified in light of the large administrative costs of applying them and the small amount of revenue collected. Such a question, however, is one for the legislature.

careful review, we believe, requires a holding affirming the tax court.

1. First, there is a presumption in favor of the constitutionality of any tax. The United States Supreme Court recently emphasized this point in *Lehnhausen v. Lake Share Auto Parts Co.,* 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351, *reh'g denied,* 411 U.S. 910, 93 S.Ct. 1523, 36 L.Ed.2d 200 *on remand sub nom. Lake Shore Auto Parts Co. v. Korzen,* 54 Ill.2d 237, 296 N.E.2d 342, *cert. denied,* 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329 (1973). Examining an earlier decision, the Court wrote:

In *Madden v. Kentucky,* 309 U.S. 83 [60 S.Ct. 406, 84 L.Ed. 590], a State laid an ad valorem tax of 50¢ per $100 on deposits in banks outside the State and only 10¢ per $1,000 on deposits within the State. The classification was sustained against the charge of invidious discrimination, the Court noting that "in taxation, even more than in other fields, legislatures possess the greatest freedom in classification." *Id.,* at 88 [60 S.Ct. at 408]. There is a presumption of constitutionality which can be overcome "only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes." *Ibid.* And the Court added, "The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Ibid.*

410 U.S. at 364, 93 S.Ct. at 1006.

2. The presumption of constitutionality given tax laws accords with a more general rule that judicial review of legislation must be carried out in light of the need "to preserve to the legislative branch its rightful independence and ability to function." *Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 510, 57 S.Ct. 868, 872, 81 L.Ed. 1245 (1937). In *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), the Court addressed the standard of review under the Equal Protection Clause. Having reiterated that the standard of review is the "rational basis" test, the Court went on to explain what review under this standard entails.

[S]tates are not required to convince the courts of the correctness of their legislative judgments. Rather, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decision-maker." *Vance v. Bradley,* 440 U.S. [93] at 111 [99 S.Ct. 939 at 950, 59 L.Ed.2d 171].

449 U.S. at 464, 101 S.Ct. 724. Admittedly, *Clover Leaf* deals with the Equal Protection Clause, rather than the Privileges and Immunities Clause; nevertheless, in both circumstances, judicial review must respect the legislative prerogative.

One problem in determining the standard of review under the Privileges and Immunities Clause is that it has received relatively little attention from the courts.

That Clause is not one the contours of which have been precisely shaped by the process and wear of constant litigation and judicial interpretation over the years since 1789. * * * Historically, it has been overshadowed by the appearance in 1868 of similar language in § 1 of the Fourteenth Amendment, and by the continuing controversy and consequent litigation that attended that Amendment's enactment and its meaning and application.

*Baldwin v. Fish and Game Comm'n of Montana,* 436 U.S. 371, 379, 98 S.Ct. 1852, 1858, 56 L.Ed.2d 354 (1978) (footnote omitted).

Nevertheless, the United States Supreme Court has provided some guidance. The following passage outlines certain principles for analyzing a statute in light of the Privileges and Immunities Clause.

Like many other constitutional provisions, the privileges and immunities clause is not an absolute. It does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the many situations

where there are perfectly valid independent reasons for it. Thus the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them. *The inquiry must also, of course, be conducted with due regard for the principle that the States should have considerable leeway in analyzing local evils and in prescribing appropriate cures.* Toomer v. Witsell, 334 U.S. 385, 396, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460 (1948) (citation omitted) (emphasis added).

3. In the present case, there is a valid and substantial reason for differing treatment of non-resident decedents' estates. The taxable estate of a resident decedent includes tangible and intangible property located within and without the state. For non-residents' estates, only tangible property in Minnesota is included. As a result of this difference, and Minnesota's graduated tax, a non-resident is likely to be taxed at a lower rate than a resident on assets of equal value. This is particularly true where the first $60,000 of non-resident-owned property is exempt under Minn.Stat. § 291.-05(3)(i) (1978). Denying the marital exemption to non-residents is an attempt to compensate for this difference.[2]

It is argued that the state could find a better way to deal with the problem of non-residents being taxed at a lower rate than by denying them the marital exemption. The Constitution, however, does not require perfection. Here, all that is required is a "close relation" between the degree of discrimination non-residents endure and the reasons for that discrimination. We believe that the denial of the marital exemption to non-residents is sufficiently closely related to the goal of keeping non-residents from paying taxes at a lower rate and survives constitutional challenge. Thus, we affirm.

---

**2.** It should also be noted that the Minnesota Legislature could have taken into consideration the fact that the marital exemption envisions an eventual taxation of the full estate on the death of the surviving spouse. With non-residents' estates, there is the danger that surviving spouses could remove property from the jurisdiction before their deaths, thus preventing it from being taxed in Minnesota.