T.C. Memo. 2000-60

UNITED STATES TAX COURT

ANTONIO & LUZVIMINDA PUNGOT, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20036-97.                    Filed February 24, 2000.

Richard J. Sapinski, for petitioners.

Robert F. Saal and Guy G. Lavignera, for respondent.

MEMORANDUM OPINION

FAY, Judge:  Respondent determined deficiencies of $10,756
and $10,974 in petitioners' 1994 and 1995 Federal income taxes,
respectively.  After concessions, the issue for decision is
whether section 469(c)(7)(D)(ii)[1] is unconstitutional.

_____

[1]All section references are to the Internal Revenue Code in
effect for 1994 and 1995, and all Rule references are to the Tax
Court Rules of Practice and Procedure, unless otherwise noted.

This is a fully stipulated case that was submitted without a trial under Rule 122. We incorporate in this opinion the parties' stipulation of facts and the exhibits. Petitioners, who resided in West New York, New Jersey, when they petitioned the Court, filed joint Federal income tax returns for 1994 and 1995. All references to petitioner are to Antonio Pungot.

Background

During the years in issue, petitioner worked full time as a mechanical engineer for E.A. Sears Burrwood PLLC and LKU Group Inc., engineering consulting firms specializing in real estate development. He also spent time; i.e., 990 hours in 1994 and 1,552 hours in 1995, performing on-site maintenance at two residential rental properties that he and his wife owned. Petitioners, whose modified adjusted gross income exceeded $100,000, see sec. 469(i)(3)(E), deducted $27,958 and $38,759 for losses relating to the rental activity on their 1994 and 1995 Federal income tax returns, respectively. In the statutory notice, respondent overstated the amount of losses petitioners reported on Schedules E, Supplemental Income and Loss; respondent, who concedes that the notice is incorrect, now disallows $15,866 and $38,381 of petitioners' claimed losses. Petitioners concede that, absent a ruling in their favor on the constitutional issue, respondent's recomputed deficiencies of $4,125 for 1994 and $10,583 for 1995 are correct.

Discussion

Generally, individuals may not currently deduct losses from passive activities, defined to include all rental activities and any trade or business activity in which the taxpayer does not materially participate. See sec. 469(a), (c)(1), (2), (4). Material participation is involvement on a regular, continuous, and substantial basis. See sec. 469(h); see also sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5686, 5725-5726 (Feb. 25, 1988). These passive loss rules, enacted as part of the Tax Reform Act of 1986, Pub. L. 99-514, sec. 501, 100 Stat. 2085, 2233, prohibit affected taxpayers from using deductions of a passive activity to shelter wages or other active income. See Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 209-215 (J. Comm. Print 1987).

Although all rental activities are passive, regardless of the taxpayer's level of participation, Congress created an exception for post-1993 rental activities of certain real estate professionals. See sec. 469(c)(7).[2] Under this provision, a rental real estate activity is not per se passive if the taxpayer

---

[2]Legislative relief is also available under sec. 469(i), which permits a taxpayer who "actively participated" in rental real estate activities to claim a maximum loss of $25,000 annually. Sec. 469(i)(1) and (2). This exception is phased out for taxpayers with modified adjusted gross incomes between $100,000 and $150,000. See sec. 469(i)(3)(A), (E).

meets two requirements: (1) He performs more than half of his personal services during the year in real property trades or businesses in which he materially participates; and (2) he works more than 750 hours a year in those real estate activities. See sec. 469(c)(7)(B). Personal services means any work performed by an individual in connection with a trade or business. See sec. 1.469-9(b)(4), Income Tax Regs., T.D. 8645, 1996-1 C.B. 73, 76. Services rendered by an employee, however, do not count as performed in a real property trade or business unless the employee is a 5-percent owner of the employer.[3] See sec. 469(c)(7)(D)(ii) (adopting the definition of a "5-percent owner" under sec. 416(i)(1)(B)). A couple who files jointly qualifies for the exception under section 469(c)(7) only if either spouse separately satisfies both requirements. See sec. 469(c)(7)(B) (flush language). In determining material participation, however, the participation of both spouses is combined. See sec. 469(h)(5).

Respondent concedes that petitioner meets the second requirement of section 469(c)(7)(B)(ii); i.e., the 750-hour rule.

---

[3]A real property trade or business is defined broadly as "any real property development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or business." Sec. 469(c)(7)(C).

Under sec. 1.469-5(f)(1), Income Tax Regs., an employee who owns an interest in an activity is treated as participating in that activity without regard to the capacity in which he works. See also sec. 1.469-5T(k), Example (2), Temporary Income Tax Regs., 53 Fed. Reg. 5686, 5727 (Feb. 25, 1988).

Moreover, the parties stipulated that petitioner would have satisfied the first requirement if he had owned more than 5 percent of the engineering consulting firms. Petitioners' only claim is that section 469(c)(7)(D)(ii) is unconstitutional because, by treating a nonowner employee differently than a "5-percent owner", the statute violates the Fifth Amendment's guaranty of equal protection under the laws.

Generally, a statutory classification is valid if it is rationally related to a legitimate government interest. See Regan v. Taxation With Representation, 461 U.S. 540, 547 (1983). We would apply a higher standard of review if the statute infringed fundamental rights or targeted a suspect class. See, e.g., id.; Harris v. McRae, 448 U.S. 297, 322 (1980).

In taxation, more so than in some other fields, Congress has broad classification powers. See Regan v. Taxation With Representation, supra; Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 359 (1973); Steward Mach. Co. v. Davis, 301 U.S. 548, 584 (1937); Brushaber v. Union Pac. R.R., 240 U.S. 1, 25-26 (1916); Flint v. Stone Tracy Co., 220 U.S. 107, 158 (1911). As the Supreme Court emphatically noted in Madden v. Kentucky, 309 U.S. 83, 87-88 (1940):

> The broad discretion as to classification possessed by
> a legislature in the field of taxation has long been
> recognized. * * * the passage of time has only served
> to underscore the wisdom of that recognition of the
> large area of discretion which is needed by a legis-
> lature in formulating sound tax policies. * * * Since

> the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.  [Fn. ref. omitted.]

Thus, if plausible reasons exist for Congress' decision to grant deductions to some taxpayers while denying them to others, and the means chosen is not so attenuated as to render the distinction arbitrary or capricious, then we uphold the law. Indeed, the classification "will not be set aside if <u>any</u> state of facts reasonably may be conceived to justify it."  <u>McGowan v. Maryland</u>, 366 U.S. 420, 426 (1961) (emphasis added); see also <u>Bryant v. Commissioner</u>, 72 T.C. 757, 764 (1979).

Respondent maintains, and we agree, that section 469(c)(7)(D)(ii) implements legitimate goals of ensuring that only real estate professionals who have an entrepreneurial stake in a real property business will qualify for relief under section 469(c)(7).  The legislative history supports this view.

Congress enacted section 469 to foreclose tax shelters.  See S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 714.  The treatment of all rental activities as passive, however, created problems among real estate professionals.  A full-time real estate developer, for example, could not use losses from one aspect of his business; i.e., renting properties, to offset income from

another aspect of his business; i.e., developing real estate, except to the extent of the $25,000 allowance described above, see supra note 2. By contrast, a taxpayer who materially participated in any other trade or business could use losses incurred in that business against active income. To "alleviate this unfairness," Congress modified the passive loss rules by adding section 469(c)(7), effective for tax years beginning after December 31, 1993. H. Rept. 103-111, at 614 (1993), 1993-3 C.B. 167, 190.[4] Not wanting to overburden the real estate market, Congress sought to exclude active participants of that industry from the impact of section 469. It recognized, however, that an

---

[4]See also 103 Cong. Rec. 2361 (1993) (statement of Sen. Boren):

> Real estate is a major section of the U.S. economy and is a principal asset of banks, insurance companies, and pension funds. * * * Therefore, it is clearly in the best interest of our Nation's economy to have a fundamentally sound real estate market.
>
>     *      *      *      *      *      *      *
>
> The passive loss rules * * * treat people in the rental real estate business differently than professionals in all other businesses. * * *
>
> This inequitable situation has had dramatic negative economic effects. It has exacerbated the crisis in our financial industry by discouraging real estate professionals from holding on to troubled properties, thereby discouraging workouts of distressed properties. In addition, the unfavorable treatment of losses from rental real estate has decreased the willingness of entrepreneurs to purchase property held by the Resolution Trust Corporation, thus increasing the long-term exposure to all taxpayers. Finally, the downward pressure on real property values has seriously eroded local property tax bases.

employee of a real estate business, acting in any capacity, might try to deduct losses from a real estate tax shelter against his wages;[5] hence, it added the "5-percent owner" rule of section 469(c)(7)(D)(ii) to ensure that only individuals who are substantial owners of real estate businesses will benefit from the exception.

We believe section 469(c)(7)(D)(ii) survives an equal protection challenge, for Congress acted rationally in denying relief to an employee of a real estate business who lacks an ownership stake in that business.

Petitioners argue that the statute is arbitrary because it does not extend to independent contractors. They claim that, had petitioner been an independent contractor rather than an employee of the engineering consulting firms, their rental real estate losses would have been deductible against active income. We reject their argument, for it is well settled that rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993); see also Nordlinger v. Hahn, 505 U.S. 1, 10 (1992); United States R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 175 (1980). To be sure, "a State does not

---

[5]Consider, for example, a real estate lessor and full-time bookkeeper of a construction company who treats the rental activity as nonpassive because he counts his employee services as performed in a real property trade or business.

violate * * * Equal Protection * * * merely because the classifications made by its laws are imperfect." Dandridge v. Williams, 397 U.S. 471, 485 (1970).

The question is simply whether the classification is rationally related to a legitimate legislative goal. Granting relief to bona fide real estate professionals reflects such a goal; appropriately, Congress considered factors which tend to show active involvement in that industry, such as being an owner-employee of a real estate business.

In light of Congress' broad latitude as to classifications in tax statutes, we conclude that section 469(c)(7)(D)(ii) is constitutionally valid, as it rationally serves a legitimate public purpose. To reflect concessions and our conclusion herein,

Decision will be entered

under Rule 155.