Henry ACKERMAN et al., Plaintiffs

v.

COLUMBUS, GEORGIA, Defendant

No. 4:02–CV–31–1 (CDL).

United States District Court,
M.D. Georgia,
Columbus Division.

June 30, 2003.

---

**8.** Such depositions should be set after July 11, 2003, unless Plaintiffs agree to have them set earlier.

Harlan S. Miller, III, David C. Ates, Atlanta, GA. for Plaintiffs.

James C. Clark, Jr., George Golden Boyd, Jr., Columbus, GA, Clifton Cartwright Fay, Columbus, GA, for Defendant.

## ORDER

LAND, District Judge.

Plaintiffs, a group of current and former employees of the City of Columbus Police Department, contend that Defendant's compensation plan creates arbitrary pay disparities among similarly situated police officers.[1] Plaintiffs claim that the City's pay plan denies them equal protection of the law under both the United States and Georgia Constitutions. Plaintiffs also maintain that the pay plan violates the City Charter and thus constitutes a breach of their employment relationship with the City.

The Court presently has pending before it the City's Motion for Summary Judgment. The City contends that all of the provisions of its pay plan, including those criticized by Plaintiffs, have a rational basis for their existence and that any resulting disparities are rationally related to a legitimate government purpose. Therefore, the City argues that it has not violated Plaintiffs' constitutional rights to equal protection of the law; nor has it violated the City Charter, which it argues provides it with broad discretion in evaluating the factors to be considered in any pay plan. For the reasons set forth herein below, the Court grants the City's Motion for Summary Judgment.

1. Defendant will be referred to hereinafter as "the City." The City's method for promoting police personnel and calculating employee compensation will be referred to as the City's "pay plan."

## FACTUAL BACKGROUND

The City has a civil service-merit system that establishes the basic terms and conditions of employment, including wages and salaries, for all City employees. This system includes a position classification plan as well as a pay plan. Officers employed with the Columbus Police Department proceed through a series of ranks during their careers, including, but not limited to, Patrolman, "Detective–Technician," Sergeant, Lieutenant, and Captain. Within each rank, there are various pay grades that determine the compensation received by an officer at a certain rank and grade. Traditionally, length of service and performance evaluations have been significant factors determining whether an officer is promoted to the next rank or the next grade within a rank. These decisions ultimately affect the amount of compensation received by the officer.

In the 1990s, the City made significant adjustments to its pay plan. These adjustments encouraged officers, who had not yet done so, to obtain advanced educational degrees by paying officers up to ten percent of their pay as an incentive for obtaining such degrees. Changes were also implemented to increase pay for new recruits by eliminating the lowest pay grade. At the same time, adjustments were made to the highest pay grade, providing some experienced officers with an opportunity for increased compensation.[2] Finally, to establish more uniformity in promotion decisions, the City enacted changes to the pay plan that limited the percentage increases for each grade of advancement and placed a cap on the total percentage salary increase per promotion in certain circumstances.

2. These changes are referred to hereinafter as the "drop/add" changes to the pay plan.

Plaintiffs contend that these changes to the pay plan caused "pay compression," which occurs when the salary differences between the various officer ranks become smaller, resulting sometimes in officers with more years of service and equal educational credentials making no more (and sometimes less) than their fellow officers who have fewer years of service and the same educational background. Plaintiffs claim that this disparate treatment has no rational basis and violates their rights to equal protection of the law under the United States and Georgia Constitutions. They also contend that the City Charter requires that officers with more years of service be paid more than those with less experience. The City maintains that the undisputed facts establish that a rational basis exists for each of the provisions of its pay plan and that it has neither violated Plaintiffs' constitutional rights nor breached its employment relationship with Plaintiffs. Accordingly, the City has moved for summary judgment as to each of Plaintiffs' claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party, asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir.2002) (citation and internal quotation marks omitted).

The facts in this case are not seriously in dispute. The issue before the Court is whether under these undisputed facts the City is entitled to judgment as a matter of law.

## DISCUSSION

### A. Plaintiffs' Federal Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides, in pertinent part, that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Simply put, the government must treat similarly situated persons in a similar manner, unless justifiable reasons exist for treating them differently. *See, e.g., Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir.2002). For purposes of deciding the City's motion, the Court finds that sufficient evidence exists from which a reasonable jury could conclude that Plaintiffs have been treated differently than their fellow officers who are similarly situated. Therefore, for the City to prevail on its Motion for Summary Judgment, it must establish as a matter of law that a legitimate reason exists for this disparate treatment.

It is undisputed that the "rational basis" level of scrutiny applies in this case.[3] Therefore, the government action must be upheld, even if it treats similarly situated individuals differently, as long as

---

**3.** The level of scrutiny applied in equal protection cases depends upon the nature of the rights involved and the basis for the disparate classifications. If the government's alleged disparate treatment involves a suspect classification (such as race) or the infringement upon a fundamental right, then strict scrutiny applies which means that the government's action must be *narrowly tailored* to achieve a *compelling state interest. See, e.g., Williams v. Pryor,* 240 F.3d 944, 947–48 (11th Cir.2001).

this disparate treatment is *rationally related* to a *legitimate government purpose*. *See, e.g., Gary*, 311 F.3d at 1337; *see also FCC v. Beach Communications*, 508 U.S. 307, 314, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (a law will be found constitutional under rational basis scrutiny if "there is any reasonably conceivable state of facts that could provide a rational basis" for the law). Economic legislation (such as an employee pay plan) is entitled to great deference under this standard. *See Beach Communications*, 508 U.S. at 313–14, 113 S.Ct. 2096 (characterizing the level of scrutiny in such cases as "a paradigm of judicial restraint"). In exercising appropriate judicial restraint, the Court must acknowledge that "[t]he Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted *no matter how unwisely we think a political branch has acted*." *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979) (emphasis added) (footnote omitted); *see also Beach Communications*, 508 U.S. at 315, 113 S.Ct. 2096 ("Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function." (internal quotation marks and citations omitted)).

No one can seriously dispute that the pay plan presently under review by the Court enjoys a strong presumption of validity and constitutionality. *Beach Com-*

*munications*, 508 U.S. at 314, 113 S.Ct. 2096. The burden rests squarely on Plaintiffs "to negative every conceivable basis which might support it." *Id.* at 315, 113 S.Ct. 2096 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973)).

Deference to the legislative branch is especially warranted " 'where the legislature must necessarily engage in a process of line-drawing.' " *Id.* (quoting *United States R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980)). "[T]he fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." *Id.* at 316, 113 S.Ct. 2096 (internal quotation marks and citation omitted) (second alteration in original). Furthermore, the inherent nature of the legislative process requires that legislative bodies be allowed to proceed one step at a time, which sometimes results in the means not fitting with mathematical precision to the ends. *Williamson v. Lee Optical of Okla.*, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *see also Beach Communications*, 508 U.S. at 316, 316 n. 7, 113 S.Ct. 2096.

With these constitutional principles in mind, the Court analyzes each of the Plaintiffs' challenges to the City's pay plan.

*1. Educational Incentive*

■ In 1996, the Columbus City Council enacted City Ordinance 96–79, as amended, which provides educational incentives for officers who received an advanced degree on or after July 1, 1996.[4] This

---

In cases involving a quasi-suspect classification (such as gender), an intermediate level of scrutiny applies, which requires that the government action be upheld as long as it is *substantially related* to an *important government objective*. *See e.g., United States v. Virginia*, 518 U.S. 515, 532–33, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). In all other cases, a *rational basis* level of scrutiny applies, which

requires that the government action be *rationally related* to a *legitimate government purpose*. *See e.g., FCC v. Beach Communications*, 508 U.S. 307, 314, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).

4. Section 2 of Ordinance 96–79 provided: "Effective July 1, 1996, existing employees in the ... Police Department ... shall progress

change to the pay plan authorized a pay increase of one pay grade, at the same step, for each degree received. Under the prior plan, only patrolmen who received an associates degree or obtained credit for six basic courses could receive this incentive pay increase. Many Plaintiffs, who received advanced degrees before the effective date of this ordinance, received no increase in pay for their degrees. They claim that if the City provides pay incentives for some officers to obtain advanced degrees, then all officers who have obtained such a degree are entitled to the same extra compensation. Plaintiffs also contend that by providing this pay increase primarily to new recruits and officers with less experience, the City has compounded the pay compression inherent in the City's pay plan.

Defendant maintains that this educational incentive serves the legitimate purpose of encouraging new recruits and officers who have not yet obtained an advanced educational degree to obtain further education, thereby improving the educational level and corresponding quality of the police force. By restricting this incentive to those officers who had not yet obtained such degrees as of the ordinance's effective date, the City chose to "draw a line" based at least in part upon budget considerations. This decision allowed the City to improve the overall educational quality of the police force while avoiding the financial burden that would result from paying such an incentive to *all* officers who had previously obtained degrees. Although the distinction may appear subtle at first glance, it is important to observe that the purpose

of the education incentive plan was not to reward officers who *had* obtained degrees but to encourage officers who *had not* yet obtained them. The Court acknowledges that this legislative line-drawing may appear unfair to those officers who did not receive additional compensation for their degrees. However, this is the very type of legislative decision that should not be disturbed by the courts. *See Beach Communications*, 508 U.S. at 315–16, 113 S.Ct. 2096.

The Court finds that improving the educational quality of the City's police force is a legitimate government purpose, and the City's educational incentive program is rationally related to this end. Accordingly, this component of the City's pay plan does not deny Plaintiffs their constitutional right to equal protection of the law.

### 2. "Drop/Add" Changes to the Pay Plan

■ During the 1990s, the City dropped the lowest pay grade in its pay plan and made adjustments to the highest pay grade. These "drop/add" changes resulted in an increase in pay of ten percent for those officers in the lowest pay grade, who were moved up a grade when the first pay grade was eliminated. The change also resulted in a higher starting salary for new recruits. However, officers in the pay grades above that first grade did not receive commensurate increases in salary. Plaintiffs contend that these "drop/add" changes created an inequity for officers in the higher grades who had more experience and more years of service because they did not receive pay increases compa-

to the next Pay Grade, same step, upon the attainment of a baccalaureate degree or a master's degree effective the next pay period following the verification of any such degree." Columbus, Ga., Ordinance 96–79, § 2 (1996). Ordinance 00–31 later repealed Ordinance 96–79 in its entirety. Among other changes, Ordinance 00–31 provides that, as of August

14, 1997, the term "next Pay Grade, same step" should be interpreted as a pay increase of five percent. Columbus, Ga., Ordinance 00–31, § 2 (2000). Therefore, if an officer received both a baccalaureate degree and a masters degree, he or she could receive two raises of five percent each, for a total of ten percent.

rable to those given to less experienced officers. Plaintiffs further argue that the adjustments to the highest pay grade did not compensate the more experienced officers sufficiently to offset the increased pay compression caused by eliminating the first grade in the pay plan. Plaintiffs complain that the overall effect of this change to the pay plan contributed to the pay compression within the plan, which perpetuates inequitable treatment to the detriment of the more experienced officers, sometimes resulting in officers with less time in grade and less seniority being paid close to the same amount as, or even more than, more experienced officers.

The City maintains that it implemented the "drop/add" changes to increase starting salaries for new officers in an effort to remain competitive in its recruiting efforts. The City also considered the needs of the more experienced officers, as reflected by the adjustment to the highest pay grade. The City concluded that in light of budget restraints this was the best it could do.

The Court finds that the City's "drop/add" changes were rationally related to the legitimate government purpose of recruiting the best qualified new officers and retaining them. Accordingly, while the resulting compression between the grades may appear inequitable, the compression is not unconstitutional.

### 3. Limitations on Pay Increases Upon Promotion

■ Finally, Plaintiffs challenge City Ordinance 97–129. That ordinance provides that every officer who receives a promotion is entitled to a three percent, per grade adjustment. This adjustment, however, is capped at a maximum increase of ten percent for each promotion where an officer's current pay exceeds the minimum pay grade for his or her new position.[5] Plaintiffs argue that this policy results in officers with less experience ultimately receiving the same or, in some cases, higher pay than more experienced officers. Plaintiffs also contend that when these per grade increases of three percent are considered with the ten percent educational incentive raises received by many of the junior officers, the result further compresses an already fully-compressed pay plan.

The City responds that budget restraints limit its ability to grant raises. It contends that, given these financial limitations, its plan appropriately addresses the need to have some consistency within pay grades and recognizes different skill levels possessed by officers who are promoted along different tracks. The Court finds that the percentage limitations placed on salary increases accompanying promotions has a rational basis. Accordingly, this aspect of the City's pay plan is not unconstitutional.

In summary, the Court must respect the City's authority to draw lines and make decisions regarding the compensation of its employees, even if the City's approach may appear unfair and inequitable to some. The Constitution permits the City

---

**5.** Section 2 of Ordinance 97–129 states in pertinent part:

> Employees that are selected for promotion will receive a three (3) percent pay increase or the minimum rate of the new position, whichever is greater, for each pay grade that the new position exceeds the current position (e.g., 1 pay grade above current position equals a 3% minimum increase, 2 pay grades above equals 6%, etc, [sic]).

> In those cases where the employee's current rate of pay exceeds the minimum of the new position, the maximum allowable increase is ten (10) percent.

> This ordinance is retroactive back to April 29, 1997.

Columbus, Ga., Ordinance 97–129, § 2 (1997).

to treat similarly situated employees differently in the context of the pay plan under consideration, as long as it has a rational basis for doing so. The Court finds that the specific aspects of the City's pay plan challenged by Plaintiffs, when considered both separately and as a whole, do not result in an unconstitutional denial of Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Accordingly, Defendant's Motion for Summary Judgment must be, and is hereby, granted as to Plaintiffs' federal equal protection claim.[6]

### B. Plaintiffs' State Law Claims

In addition to their federal equal protection claim, Plaintiffs also assert state law claims.[7] Plaintiffs contend that the City's pay plan violates the Georgia Constitution Equal Protection Clause and the City's own Charter.

#### 1. State Equal Protection Claim

■ The Equal Protection Clause of the Georgia Constitution, Ga. Const., art. I, § 1, para. II, has been interpreted by Georgia courts to be consistent with the federal Equal Protection Clause. *See Old S. Duck Tours v. Mayor & Aldermen of Savannah,* 272 Ga. 869, 873, 535 S.E.2d 751, 755 (2000) (citing *City of Atlanta v. Watson,* 267 Ga. 185(1), 475 S.E.2d 896 (1996)). Therefore, the Court's analysis of Plaintiffs' state law equal protection claim mirrors its analysis of their federal equal protection claim. Consequently, for the same reasons that Plaintiffs' federal equal protection challenge must fail, Plaintiffs' state equal protection challenge must likewise fail. Accordingly, Defendant's Mo-

tion for Summary Judgment is granted as to Plaintiffs' state equal protection claim.

#### 2. State Breach of Contract Claim

■ Plaintiffs contend that the City Charter is part of their employment contract with the City. Assuming *arguendo* that this contention is correct, the Court finds that Defendant is still entitled to summary judgment on Plaintiffs' breach of contract claim because the City's pay plan does not constitute a breach of any provision in the City Charter. The Charter provision relied upon by Plaintiffs reads in pertinent part as follows:

> Such salary plan shall provide for regular increments of salary increases within such range to be earned by length of service and satisfactory service ratings. Each such range shall be determined with due regard to the salary ranges for other classes and the relative difficulty and responsibility of characteristic duties of positions in the class, minimum qualifications required, the prevailing rate paid for similar employment outside the service of the consolidated government, and any other factors that may properly be considered to have a bearing upon the fairness or adequacy of the range.

Columbus, Ga., Charter § 8–304(2). Plaintiffs interpret this Charter provision to require the City to base its pay plan primarily upon years of service. The City responds that the Charter simply identifies longevity of service as one factor to be considered.

The Court finds that the Charter provision unambiguously provides that factors other than longevity of service may be considered when developing an employee

---

**6.** In light of this ruling, it is not necessary to address the City's contention that Plaintiffs' constitutional claims are barred by the applicable statute of limitations.

**7.** The Court has supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(a).

pay plan. Although longevity of service is one factor to be considered, other factors, including performance, job responsibilities, prevailing market pay rates, and "any other factors," may be considered. *See* Columbus, Ga., Charter § 8–304(2). Therefore, it is clear that the City's pay plan does not violate this provision of the City Charter and does not otherwise breach any aspect of the employment relationship between the Plaintiffs and the City. Accordingly, the City is entitled to summary judgment on this claim.[8]

## CONCLUSION

The Court sympathizes with Plaintiffs' predicament. They, along with most public safety employees, likely do not receive the compensation that they deserve. Moreover, as with any human creation that attempts to balance competing interests using limited resources, the City's pay plan is no doubt imperfect and arguably unfair to some extent. A reasonable observer could even conclude that it does not treat some officers equitably as compared to their fellow officers. However, Plaintiffs' grievances can only be redressed by the members of the City Council who have been duly elected to draw these lines and make these distinctions. Absent a constitutional violation or some other breach of legal duty (neither of which exists under the undisputed facts of this case), this Court's hands are justifiably tied. Based on the foregoing, Defendant's Motion for Summary Judgment must be, and is hereby, granted.

---

**8.** In light of this ruling, it is unnecessary to address the City's contention that Plaintiffs' state law claim is barred by the applicable statute of limitations.