Jesus Javier DURAN–JURADO, aka
Jesus Javier Duran, aka Jesus
Javier Chuy, Petitioner,

v.

Peter D. KEISLER,* Acting Attorney
General, Respondent.

No. 06–73258.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 14, 2007.

Filed Oct. 4, 2007.

O'Scannlain, Circuit Judge, concurred in
part, dissented in part, and filed opinion.

Paul Wolfson, Esq., Anne Harkavy,
Esq., Jane E. Maschka, Esq., Wilmer Cutler Pickering Hale & Dorr, LLP, Washington, DC, for Petitioner.

Jesus Javier Duran–Jurado, Santa Ana,
CA, pro se.

Ronald E. Lefevre, Chief Counsel, Office
of the District Counsel Department of
Homeland Security, San Francisco, CA,
District Counsel, Office of the District
Chief Counsel U.S. Department of Homeland Security, Phoenix, AZ, Oil, U.S. Department of Justice Civil Div./Office of Immigration Lit., Jeffrey L. Menkin, U.S.
Department of Justice Civil Division,
Washington, D.C., for Respondent.

Before: O'SCANNLAIN, HAWKINS,
and WARDLAW, Circuit Judges.

MEMORANDUM **

Jesus Javier Duran–Jurado ("Duran")
petitions for review of the Board of Immigration Appeals's ("BIA") final order of
removal, arguing that he cannot be removed because he is (or should be deemed)

---

* Peter D. Keisler is substituted for his predecessor, Alberto R. Gonzales, as Acting Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

a United States citizen or, alternatively, that his case should be remanded to the BIA for it to consider his application for cancellation of removal—a form of relief for which he argues the Immigration Judge ("IJ") improperly found him ineligible.

We deny in part and grant in part Duran's petition for review. We conclude that the laws in place in 1986[1] (which required United States citizen parents to *petition* for citizenship of their foreign-born adopted children, but granted *automatic* citizenship to foreign-born adopted children upon naturalization of their foreign-born parents), as well as the Child Citizenship Act of 2000 ("CCA") (which removed the petition requirement just mentioned, but was not made retroactive so as to confer automatic citizenship upon people like Duran who were over age 18 as of that law's effective date), do not operate so as to violate the equal protection portion of the Fifth Amendment's Due Process Clause. However, we also find Duran eligible for cancellation of removal, and thus remand for consideration of his application for this form of relief.

## I

A naturalization scheme withstands equal protection scrutiny as long as there exists a " 'facially legitimate and bona fide reason' " for that scheme, *Barthelemy v. Ashcroft*, 329 F.3d 1062, 1065 (9th Cir. 2003) (quoting *Fiallo v. Bell*, 430 U.S. 787, 794, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977))—a standard this court has equated with rational basis review, *see Ablang v. Reno*, 52 F.3d 801, 804 (9th Cir.1995). A scheme survives rational basis review as long as it is "rationally related to a legitimate Gov-

ernment purpose," *Schweiker v. Wilson*, 450 U.S. 221, 242, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981), and thus the " 'burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it,' " *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973)); *see also id.* at 319–20, 113 S.Ct. 2637 (schemes subject to rational basis review are presumed constitutional).

As to the 1986 laws, that legislative scheme is rational because: (1) the government has a legitimate interest in notification of an alien's naturalization; and (2) requiring a petition to be filed on behalf of those adopted children who would not *already* be disclosed to the government on their adoptive parents' naturalization applications was a rational way to further that interest. As to the CCA's non-retroactivity, we find that legislative choice rational because: (1) Congress—which has "nearly plenary power to establish the qualifications for citizenship," *Barthelemy*, 329 F.3d at 1065—has a legitimate interest in controlling the number of new citizens the nation accepts; and (2) correcting the perceived inequity *prospectively*, but not retrospectively, was a rational means of furthering that interest. We thus conclude that neither scheme violates the Equal Protection Clause and, therefore, that Duran remains removable because he is not (and should not be deemed) a United States citizen.

## II

We nonetheless grant Duran's petition for review because the IJ erroneously cat-

---

1. The 1986 naturalization laws are relevant because Duran claims he should have derived citizenship through his adoptive parents upon his entry into the United States in 1986. *See Minasyan v. Gonzales*, 401 F.3d 1069, 1075

(9th Cir.2005) ("As with all forms of citizenship, derivative citizenship is determined under the law in effect at [the] time the critical events giving rise to eligibility occurred.").

egorized his conviction for violating section 11352(a) of California's Health and Safety Code as an aggravated felony under *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and thus improperly found Duran ineligible for cancellation of removal.

We first note that Duran properly exhausted this issue by raising it in his notice of appeal to the BIA. *See Ladha v. INS*, 215 F.3d 889, 903 (9th Cir.2000). When an issue has been properly exhausted but has not yet been passed upon by the BIA, we ordinarily remand to the BIA rather than resolve that issue ourselves. *See, e.g., Montes–Lopez v. Gonzales*, 486 F.3d 1163, 1165 (9th Cir.2007). Here, however, the question Duran asks the panel to answer is purely one of law, does not involve agency discretion or expertise, and can be answered based upon a fully developed record below; thus, conservation of judicial resources counsels in favor of the panel considering the issue at this stage. *See Fernandez–Ruiz v. Gonzales*, 466 F.3d 1121, 1132–35 (9th Cir.2006) (en banc).

We have previously held that a conviction under section 11352(a) is not categorically an "aggravated felony." *See United States v. Rivera–Sanchez*, 247 F.3d 905, 909 (9th Cir.2001) (en banc) (overruling *United States v. Lomas*, 30 F.3d 1191, 1194–95 (9th Cir.1994)). Accordingly, the IJ correctly resorted to *Taylor*'s modified categorical approach. *Id.* at 908–09. Although an IJ conducting a modified categorical analysis is entitled to rely on a plea agreement to determine "whether there is sufficient evidence to conclude that the alien was convicted of the elements of the generically defined crime even though his or her statute of conviction was facially overinclusive," *Ferreira v. Ashcroft*, 390 F.3d 1091, 1095 (9th Cir.2004); *see also Shepard v. United States*, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), a plea agreement is *only* sufficient to carry the government's burden under the modified categorical approach when that agreement "establish[es] *clearly and unequivocally* [that] the conviction was based on all of the elements of a qualifying predicate offense," *United States v. Navidad–Marcos*, 367 F.3d 903, 908 (9th Cir.2004) (emphasis added).

Here, Duran was charged with violating section 11352(a), which punishes those who transport, import, sell, furnish, and/or administer controlled substances (as well as those who offer or attempt to do any of the aforementioned activities). And yet, in his plea agreement, Duran does not admit to *any* conduct violating section 11352(a); rather, he admits he "unlawfully possessed heroin and cocaine for sale with knowledge of their narcotic presence and narcotic nature"—conduct that comes closer to violating section 11351 of California's Health and Safety Code than section 11352(a). Because the factual admissions in Duran's plea agreement do not "confirm[ ] the factual basis for a valid plea" to violation of section 11352(a), the IJ was incorrect to rely upon it. *See Shepard*, 544 U.S. at 25, 125 S.Ct. 1254.

Because no other acceptable piece of evidence in the record establishes the factual basis for Duran's plea, *see id.* at 16, 125 S.Ct. 1254 (explaining that courts conducting modified categorical analyses are permitted to consult *only* "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented"), the government did not carry its burden of establishing "clearly and unequivocally that Duran was convicted of an aggravated felony." Accordingly, the IJ erred when he found Duran ineligible for cancellation of removal.

We thus remand to the BIA for consideration of Duran's application for cancellation of removal, absent the aggravated felony determination.

**DENIED IN PART, GRANTED AND REMANDED IN PART.**

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

While I agree with the Court that Duran–Jurado's equal protection claim fails and agree with its decision to remand his cancellation of removal claim, I do not agree with its analysis in two respects.

## I

I would hold that we do not have jurisdiction to hear Duran–Jurado's equal protection claim because he does not have standing; I would not reach the constitutionality of the 1986 naturalization regime, *see* 8 U.S.C. §§ 1432, 1433 (1986) or the Child Citizenship Act of 2000, *see* 8 U.S.C. § 1433 (2002).

A court must always satisfy itself that it has jurisdiction before proceeding to the merits of a case. *See Valley Forge Christian College v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Here, Duran–Jurado does not have standing to bring his own claim because (1) his injury was caused by the inaction of his adoptive parents and is not fairly traceable to the challenged naturalization scheme; and (2) we cannot grant Duran–Jurado citizenship to redress the harm. *See Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (holding that Article III standing requires (1) "a personal injury;" (2) "fairly traceable to the defendant's allegedly unlawful conduct;" and (3) that the injury is "likely to be redressed by the requested relief").

Nor can Duran–Jurado bring a third party standing claim on behalf of his deceased parents because his injury cannot be redressed by this Court based on his parents' equal protection rights. *See Singleton v. Wulff*, 428 U.S. 106, 113, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ("If the physicians prevail in their suit [brought on behalf of women who want abortions,] to remove this limitation, they will benefit, for they will then receive payment for the abortions."). In any event, Duran–Jurado's parents' claim fails for lack of traceability and redressability. *See Allen*, 468 U.S. at 751, 104 S.Ct. 3315. Moreover, because Duran–Jurado's parents are dead, any psychological harm that they might have suffered due to unequal treatment is moot. *See Center for Biological Diversity v. Lohn*, 483 F.3d 984, 987–89 (9th Cir. 2007).

For the foregoing reasons, I would dismiss on jurisdictional grounds, rather than deny, Duran–Jurado's equal protection claim.

## II

I agree that Duran–Jurado's application for cancellation of removal was properly remanded; the IJ erred by relying *solely* on the plea. However, I do not agree that we should determine whether his conviction is an aggravated felony under *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); I would permit the BIA to consider this question on remand.

The majority points out that it would save judicial resources for us to decide this question and that the aggravated felony determination does not fall within the agency's expertise. But, the removal proceedings are the responsibility of the agency and we should remand this question in accordance with customary practice. *See INS v. Orlando Ventura*, 537 U.S. 12, 16,

123 S.Ct. 353, 154 L.Ed.2d 272 (2002). Saving judicial resources, while admirable, does not rise to the level of a "special circumstance" which allows us to disregard the ordinary remand rule. *See Gonzales v. Thomas*, 547 U.S. 183, 185, 187, 126 S.Ct. 1613, 164 L.Ed.2d 358 (2006) (holding that due to the absence of a "special circumstance" we improperly decided a question that is the responsibility of the Attorney General and his delegates). Therefore, we should have given the BIA the opportunity to review this question in the first instance.

For the foregoing reasons, while I agree with the Court's decision to remand, I must dissent from its aggravated felony determination.

---

\** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.