In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1923

Henry Turner, on his own behalf and
on behalf of all those similarly situated,

Plaintiffs-Appellants,

v.

Daniel R. Glickman, in his official
capacity as Secretary of the United States
Department of Agriculture, and Peter J.
Sybinsky, in his official capacity as
Secretary of the Indiana Family and
Social Services Administration,

Defendants-Appellees.


Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 98 C 1084--Richard L. Young, Judge.


Argued December 1, 1999--Decided March 16, 2000


        Before Bauer, Cudahy, and Flaum, Circuit Judges.

        Flaum, Circuit Judge.  The class representative,
Henry Turner, on his own behalf and on behalf of
all those similarly situated, challenges the
constitutionality of 21  U.S.C. sec. 862a./1
That statute provides that individuals convicted
of certain drug-related felonies are permanently
ineligible for benefits under the federal food
stamp and Temporary Assistance for Needy Families
("TANF") programs. The plaintiffs-appellants
allege that this statute violates the Due Process
Clauses of the Fifth and Fourteenth Amendments,
the equal protection component of the Fifth
Amendment's Due Process Clause and the Equal
Protection Clause of the Fourteenth Amendment,
and the Double Jeopardy Clause of the Fifth
Amendment to the United States Constitution. The
district court rejected these constitutional
claims and entered judgment for the defendants-
appellees. For the reasons stated below, we
affirm the decision of the district court.

I.  Facts

The statutory provision at issue in this case, 21 U.S.C. sec. 862a, was enacted by Congress as part of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, sec. 115, 110 Stat. 2105, 2180-81 (1996). The statute was passed in response to growing concerns about the escalating costs of federal welfare programs. See 142 Cong. Rec. H9401 (daily ed. July 31, 1996) (statement of Rep. Smith); 142 Cong. Rec. S9390 (daily ed. Aug. 1, 1996) (statement of Sen. Helms). In particular, Section 862a was an attempt to address what many members of Congress regarded as increasing and costly incidences of fraud in the food stamp program. See H.R. Doc. No. 104-651 (1996), reprinted in 1996 U.S.C.C.A.N. 2183, 2201, 2202; Enforcement of the Food Stamp Program: Hearing Before the House Comm. on Agric., 104th Cong. (1995) (statement of Roger C. Viadero, Inspector General of the U.S. Dep't of Agric.).

Section 862a attempts to reach the problem of fraud by permanently disqualifying individuals convicted of certain drug-related felonies from receiving benefits under either the federal food stamp program or the TANF program. Although Congress did not specify where this provision was to be codified, the Office of Law Revision Counsel placed the statute in Title 21 of the United States Code. The statute applies to all convictions occurring on or after August 22, 1996. The law provides that states may exempt recipients from disqualification under Section 862a, but the State of Indiana has chosen not to provide such an exemption to its citizens.

The class representative, Henry Turner, is an Indiana resident and former recipient of food stamps. As part of an annual review of his food stamp eligibility, Turner was required to reapply for that program in January 1998. Subsequent to this reapplication, Turner was convicted of felony possession of heroin and cocaine based on conduct that occurred in April 1997. Solely because of this conviction, Turner's pending reapplication for food stamps was denied under Section 862a.

In August 1998, Turner commenced a class action suit for declaratory and injunctive relief in federal district court, challenging the constitutionality of Section 862a. Following a hearing on the parties' cross-motions for summary judgment, the district court entered judgment for the defendants-appellees. The plaintiffs-appellants now appeal the decision of the district court, arguing that permanent disqualification from participation in the food stamp and TANF programs of those convicted of certain drug-related felonies violates the Due

Process Clauses of the Fifth and Fourteenth Amendments, the equal protection component of the Fifth Amendment's Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment, and the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

## II. Analysis

### A.

The plaintiffs-appellants first contend that Section 862a violates the equal protection component of the Fifth Amendment's Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment because it lacks any rational basis connected to a legitimate government interest. Because the statute at issue does not implicate any fundamental rights or involve any suspect classifications, see Department of Agric. v. Moreno, 413 U.S. 528, 533 (1973), the question before us is whether the stated reasons proffered by the government are a sufficient justification to survive rational basis review, see Heller v. Doe, 509 U.S. 312, 320 (1993) ("[A] classification [neither involving fundamental rights nor proceeding along suspect lines] cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate government purpose."). In rejecting the plaintiffs-appellants' equal protection challenge, the district court found three rational bases for the legislation: (1) deterring drug use; (2) reducing fraud in the food stamp program; and (3) curbing welfare spending. The defendants-appellees assert these same three bases for the statute now, and argue that they all represent legitimate government interests.

In attempting to show that the classification in Section 862a has no rational basis, the plaintiffs-appellants must meet a heavy burden. Rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." FCC v. Beach Comm., Inc., 508 U.S. 307, 313 (1993). Rather, we must uphold the challenged classification if "there is a rational relationship between the disparity of treatment and some legitimate government purpose." Heller, 509 U.S. at 320. In order to show that Section 862a is irrational, the plaintiffs-appellants must "'negative every conceivable basis which might support it,' . . . whether or not the basis has a foundation in the record." Id. at 320-21(quoting Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364 (1973)). However, "the relationship of the classification

to its goal [must] not [be] so attenuated as to render the distinction arbitrary or irrational." Nordlinger v. Hahn, 505 U.S. 1, 11 (1992) (citing City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 446 (1985)).

The plaintiffs-appellants argue that Section 862a is exactly the kind of arbitrary and irrational government sanction that the equal protection guaranties forbid. As the plaintiffs-appellants correctly point out, one of the express purposes of the Food Stamp Act is "[t]o alleviate . . . hunger and malnutrition . . . [by] permit[ting] low-income households to obtain a more nutritious diet through normal channels of trade." 7 U.S.C. sec. 2011. According to the plaintiffs-appellants, Section 862a is not relevant to this purpose because it deprives individuals convicted of drug-related felonies of food stamps despite their continuing financial and nutritional needs. Furthermore, the plaintiffs-appellants contend that Section 862a has no rational connection to the three justifications accepted by the district court: deterring drug use, reducing fraud in the food stamp program, and curbing welfare spending.

Ordinarily, an argument as to the actual purpose of a legislature in passing a law would not be relevant to the question of whether the challenged classification had a rational connection to a legitimate government interest. See Beach Comm., 508 U.S. at 315 (stating that "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature") (citing Railroad Retirement Bd. v. Fritz, 449 U.S. 166, 179 (1980)). However, as we understand it, the plaintiffs-appellants' argument does not rest on their ability to prove that Congress acted with an unconstitutional motive. Rather, the plaintiffs-appellants argue that because no possible motive exists for passing this law other than punishment, Congress must have acted out of animus toward individuals convicted of drug-related felonies and that the district court's assertion that the law functions to reduce welfare fraud, deter drug abuse, and decrease welfare expenditures is therefore implausible. If this is true, and the plaintiffs-appellants can "'negative every conceivable basis which might support [Section 862a],' . . . whether or not the basis has a foundation in the record," id. at 320-21(quoting Lehnhausen, 410 U.S. at 364), then the challenged statute would lack a rational relation to a legitimate state interest.

After a consideration of Section 862a in light of the proffered government interests, we reject

the plaintiffs-appellants' equal protection challenge. First, as the district correctly found, there is a rational connection between the disqualification of drug felons from eligibility for food stamps and TANF and the government's desire to deter drug use. Rendering those convicted of drug-related felony crimes ineligible to receive food stamps or aid under TANF is a potentially serious sanction, and individuals who are currently eligible for such assistance would undoubtedly consider potential disqualification from federal benefits before engaging in crimes involving illegal drugs. It was not irrational for Congress to conclude that the disqualification of drug felons from receiving certain kinds of federal aid under Section 862a would deter drug use among the population eligible to receive that aid. This is all that is required to sustain a classification in the face of an equal protection challenge when the challenged classification is subject to rational basis review. See Heller, 509 U.S. at 319 ("[A] classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'") (quoting Beach Comm., 508 U.S. at 313).

Similarly, the district court was correct in finding a rational connection between Section 862a and the government's desire to reduce fraud in the food stamp program. As we noted above, Congress passed this law at a time when serious concerns had arisen regarding rising welfare costs and increasing fraud in the food stamp program. The legislative record in this case contains testimony that food stamps were being traded for drugs. See H.R. Rep. No. 104-651, at 68 (1996), reprinted in 1996 U.S.C.C.A.N. 2183, 2202. In light of this testimony, it was not irrational for Congress to conclude that denying food stamps and TANF aid to those convicted of a drug felony would decrease the overall incidences of fraud in those programs. The challenged classification thus survives rational basis review on this ground as well.

The plaintiffs-appellants contend that existing anti-fraud provisions in the Food Stamp Act, as well as the fact that this statute exempts those convicted of other felonies, undermine the government's contention that this statute is aimed at deterring drug use and reducing welfare fraud. However, on the facts of this case, we find nothing in the equal protection guaranties that would inhibit Congress's ability to attempt various means of reducing welfare fraud, nor that would require Congress to address every aspect of the problem at this time. Congress was concerned

about loopholes in the existing legislation covering food stamp fraud, and it is entitled to take measures to prevent that fraud in addition to the existing anti-fraud provisions of the Food Stamp Act./2 See Lyng v. Castillo, 477 U.S. 635 (1986) (upholding classification partly aimed at preventing food stamp fraud despite the anti-fraud provisions of the Food Stamp Act). Nor does the equal protection requirement prevent Congress from acting incrementally. See Milner v. Apfel, 148 F.3d 812, 814 (7th Cir. 1998) ("Legislatures are permitted to correct a problem incrementally even though by doing so they create arbitrary distinctions until correction is complete."). Here, where the law is rationally based on the government's desire to deter drug use and reduce welfare fraud,/3 the plaintiffs-appellants' argument that the law is actually aimed at punishment is not sufficient to show a violation of the plaintiffs-appellants' equal protection rights. See Vance v. Bradley, 440 U.S. 93, 97 (1979) ("The Constitution presumes that, absent some reason to infer antipathy, . . . judicial intervention is generally unwarranted.").
B.

The plaintiffs-appellants next contend that Section 862a unconstitutionally burdens their rights under the Due Process Clauses of the Fifth and Fourteenth Amendments. Because Section 862a does not implicate a fundamental right, substantive due process requires only that the statutory imposition not be completely arbitrary and lacking any rational connection to a legitimate government interest. See Washington v. Glucksberg, 521 U.S. 702, 722 (1997); Flemming v. Nestor, 363 U.S. 603, 611 (1960) (stating that a statute that does not implicate a fundamental right will not be deemed to violate the requirements of substantive due process absent a showing that "the statute manifests a patently arbitrary classification, utterly lacking in rational justification"). The plaintiffs-appellants' due process claim, like their equal protection claim, is thus subject to highly-deferential rational basis review.

For the same reasons that the plaintiffs-appellants cannot make out an equal protection claim, their due process argument fails as well. In order for us to uphold this statute, the government need only show a rational connection between Section 862a and a legitimate government interest. See Glucksberg, 521 U.S. at 722; Flemming, 363 U.S. at 611. Here, as we discussed at length above, the challenged statute has a rational basis in both the government's desire to deter drug use and to reduce the incidences of fraud in the food stamp program. In light of these rational bases proffered by the government,

the plaintiffs-appellants have not made the kind of showing necessary for us to invalidate the statute under the deferential standard of rational basis review.

C.

Lastly, the plaintiffs-appellants contend that Section 862a inflicts a second punishment on those convicted of drug-related felonies in violation of the Double Jeopardy Clause. The representative plaintiff in this case was convicted of possession of cocaine and heroin, and was sentenced to one year in prison and one year of probation. According to the plaintiffs-appellants, this punishment was followed by a second punishment for the same conduct when, through the effect of Section 862a, he was permanently disqualified from receiving federal assistance under the food stamp and TANF programs. The plaintiffs-appellants allege that because Congress intended to punish those convicted of drug-related felonies when it passed Section 862a, that statute's sanction is an unconstitutional second punishment based on the same underlying conduct from which his prison sentence and probation stemmed.

The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. While "[t]he Clause protects . . . against the imposition of multiple criminal punishments for the same offense," Hudson v. United States, 118 S.Ct. 488, 493 (1997), it has long been "recognized that the Double Jeopardy Clause does not prohibit the imposition of any additional sanction that could "in common parlance" be described as punishment." Id. (citing United States ex rel. Marcus v. Hess, 317 U.S. 537, 549 (1943) (quoting Moore v. Illinois, 14 How. 13, 19 (1852))). The question, then, is whether Section 862a functions as the kind of criminal punishment covered by the Double Jeopardy Clause, or whether the statute is a civil penalty not subject to the prohibitions of that Clause.

Our analysis as to whether the penalty is properly deemed criminal or civil involves two steps: (1) an examination of congressional intent; and (2) a consideration of the effect and purpose of the statute. As to congressional intent, our inquiry is "at least initially, a matter of statutory construction." Hudson, 118 S.Ct. at 493. We look to whether Congress "indicated either expressly or impliedly" that Section 862a was a criminal or civil penalty. United States v. Ward, 448 U.S. 242, 248 (1980). If we determine that Congress intended the

statute to be a criminal punishment of those convicted of drug-related felonies, our inquiry is at an end and the statute would constitute criminal punishment for purposes of the Double Jeopardy Clause. See Kennedy v. Mendoza-Martinez, 372 U.S. 144, 169 (1963). However, if we conclude that Congress intended a punishment to be civil in nature, we then turn to the purpose and effect of the statute to determine whether a penalty Congress intended to be civil in nature actually functions as a criminal one. Id. at 168-69.

1. Congressional Intent

The plaintiffs-appellants concede that Congress did not expressly indicate that Section 862a was to be a criminal penalty, but they argue that an examination of the statute and the legislative history reveals an implied intention to levy criminal punishment against those convicted of drug-related felonies. Specifically, the plaintiffs-appellants assert that the language of the statute, the placement of the statute in Title 21 of the United States Code, and the legislative history indicate that Congress intended Section 862a to function as criminal punishment. We will address each of these arguments in turn.

The plaintiffs-appellants first contend that the language of the statute itself indicates a congressional intent to levy a criminal punishment through the enactment of Section 862a. In support of this argument, the plaintiffs-appellants note that the title of the statute states that its sanction applies only to "certain drug-related convictions." 21 U.S.C. sec. 862a. Furthermore, the plaintiffs-appellants assert that the statute defines the prohibited activity in criminal terms by referring to the "element[s of] . . . possession, use, or distribution of a controlled substance." 21 U.S.C. sec. 862a(a). We find this evidence drawn from statutory language inconclusive. The statute does apply to drug-related convictions, and speaks of the prohibited activity in criminal terms, but this is only evidence of the criminal nature of the underlying conduct triggering the sanction of Section 862a. These aspects of the statute do not speak to the nature of the sanction itself, and therefore we cannot conclude from the language of the statute alone that Congress intended it to function as a criminal punishment.

The plaintiffs-appellants next argue that the placement of Section 862a in Chapter 13 of Title 21 of the United States Code is illustrative of a congressional intent to criminally punish drug offenders. Although Congress enacted Section 862a as part of a package of welfare reform

legislation, the statute was codified as an addition to Chapter 13 of Title 21, the section of the criminal code created by the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. sec. 801 et seq. Part D of Chapter 13 of Title 21, the section in which the challenged statute was placed, is entitled "Offenses and Penalties." According to the plaintiffs-appellants, Section 862a's inclusion in a section of the criminal code dealing with the enforcement of the nation's drug laws indicates a clear congressional preference that it be classified as a criminal penalty.

We generally agree with the plaintiffs-appellants' assertion that the placement of a statutory provision in the criminal code, and the nature of the surrounding provisions, can be a relevant factor in determining whether Congress intended that provision to serve as a criminal punishment or a civil sanction. See Kansas v. Hendricks, 521 U.S. 346, 361 (1997). However, in this case, the plaintiffs-appellants' argument as to the placement of Section 862a in Chapter 13 of Title 21 ignores Congress's actual role in the codification decision. Section 862a was not placed in the criminal code according to the specification of Congress; that decision was made by the Office of Law Revision Counsel. See 2 U.S.C. sec. 285b(4). Moreover, Congress has not approved this codification decision by subsequently enacting Title 21 into positive law. See United States Code, Preface, at VII (Supp. III 1997); see also LaCrosse v. Commodity Futures Trading Comm'n, 137 F.3d 925, 927 n.1 (7th Cir. 1998) (noting that less than half the titles in the United States Code have been enacted into positive law). Because Congress did not make the decision to place Section 862a in the criminal code, that placement is not evidence of congressional intent to levy a criminal punishment. We therefore accord that placement no weight. See United States v. Welden, 377 U.S. 95, 99 n.4 (1964) ("Certainly where . . . the 'change of arrangement' was made by a codifier without the approval of Congress, it should be given no weight.") (quoting Murrell v. Western Union Tel. Co., 160 F.2d 787, 788 (5th Cir. 1947)).

Finally, the plaintiffs-appellants argue that the legislative history of Section 862a indicates Congress's preference that the statute be criminally punitive. However, the plaintiffs-appellants concede that the legislative history addressing the statute is sparse at best. The only evidence the plaintiffs-appellants cite is a statement by the original author of the bill, Senator Phil Gramm of Texas, who urged that "if we are serious about our drug laws, we ought not

to give people welfare benefits who are violating the Nation's drug laws." 142 Cong. Rec. S8493, S8498 (July 23, 1996). Such a statement standing alone is no evidence of congressional intent, and at best reflects Senator Gramm's own feelings that the law would help deter the illegal use of, and trafficking in, drugs. The legislative history in this case gives no indication of a congressional intent to criminally punish those convicted of drug-related felonies.

The most significant indication we can find of congressional intent is the enforcement provisions provided by Congress. Significantly, the ineligibility provisions of Section 862a are not enforced through any criminal process. Rather, the permanent disqualification from the receipt of food stamps and TANF benefits of individuals convicted of drug-related felonies is enforced by the state agencies responsible for administering the food stamp program. In this case, the representative plaintiff's reapplication for food stamps was denied by the Indiana Family and Social Services Administration, not the Indiana courts. It is widely-recognized that the fact that Congress makes a statute enforceable by an administrative agency "is prima facie evidence that Congress intended to provide for a civil sanction." Hudson, 188 S.Ct. at 103 (citing Helvering v. Mitchell, 303 U.S. 391, 402 (1938)); S.A. Healy Co. v. Occupational Safety and Health Review Comm'n, 138 F.3d 686, 688 (7th Cir. 1998); LaCrosse, 137 F.3d at 931.

The plaintiffs-appellants contend that the fact that Section 862a is administered by state agencies is irrelevant because those agencies exercise no discretion in disqualifying persons convicted of a drug-related felony. According to the plaintiffs-appellants, it is the agency's exercise of discretion that renders a punishment presumptively civil in character. We disagree. A statute administered by an agency is presumptively civil not because the agency exercises discretion in administering it, but rather because agency enforcement mechanisms do not contain the same procedural safeguards that criminal proceedings do. See Helvering, 303 U.S. at 402 ("Civil procedure is incompatible with the accepted rules and constitutional guaranties governing the trial of criminal prosecutions, and where civil procedure is prescribed for the enforcement of remedial sanctions, those rules and guaranties do not apply."). Because the enforcement mechanism provided by Congress for Section 862a is enforced by administrative agencies who do not provide the kind of rules and guaranties attendant in criminal proceedings, we must presume that Congress intended it to act as

a civil sanction. See Hudson, 118 S.Ct. at 495;
Helvering, 303 U.S. at 402 ("That Congress
provided a distinctly civil procedure . . .
indicates clearly that it intended a civil, not
a criminal, sanction.").

2.  The Statute's Effect

     Our conclusion that Congress intended the
sanction of Section 862a to be civil in nature
does not end our double jeopardy inquiry. Having
found no congressional intent to criminally
punish, we must now look for "the clearest
proof," Hudson, 118 S.Ct. at 493, that "the
statutory scheme [is] so punitive in purpose or
effect," Ward, 448 U.S. at 248-49, as to
"transform what was clearly intended as a civil
remedy into a criminal penalty." Rex Trailer Co.
v. United States, 350 U.S. 148, 154 (1956);
United States v. Newman, 144 F.3d 531, 540 (7th
Cir. 1998). If the statute does serve as a
criminal punishment in purpose and effect, then
we must disregard Congress's intent to create a
civil sanction.


     Our determination as to whether Congress
intended Section 862a to criminally punish is
made according to a number of guidelines,
including: (1) "[w]hether the sanction involves
an affirmative disability or restraint"; (2)
"whether it has historically been regarded as a
punishment"; (3) "whether it comes into play only
on a finding of scienter"; (4) "whether its
operation will promote the traditional aims of
punishment--retribution and deterrence"; (5)
"whether the behavior to which it applies is
already a crime"; (6) "whether an alternative
purpose to which it may rationally be connected
is assignable for it"; and (7) "whether it
appears excessive in relation to the alternative
purpose assigned." Mendoza-Martinez, 372 U.S. at
168-69.

     The plaintiffs-appellants contend that five of
the seven factors outlined in Mendoza-Martinez
show that the sanction of Section 862a is so
punitive in purpose and effect as to transform it
into a criminal penalty. Specifically, the
plaintiffs-appellants argue that Section 862a:
(1) comes into play only on a finding of
scienter; (2) operates to promote the traditional
aims of punishment; (3) applies to conduct that
is already a crime; (4) is not assignable to an
alternative purpose to which it may be rationally
connected; and (5) seems to be excessive in
relation to any rational purpose that may be
assigned to it. While we agree that the sanction
of Section 862a comes into play only a finding of
scienter, operates to promote the traditional

aims of punishment, and applies to conduct that is already a crime, we do not agree that the other two factors cited by the plaintiffs-appellants indicate a criminally punitive purpose and effect. Nor do we agree that the three factors that do tip in the plaintiffs-appellants' favor demonstrate by the "clearest proof" that Section 862a functions as a criminal penalty.

An examination of the Mendoza-Martinez factors that the plaintiffs-appellants allege indicate a criminally punitive purpose and effect reveals that those factors are at best inconclusive. For instance, because the majority of the underlying drug offenses that trigger disqualification under Section 862a contain a scienter requirement, the statute "comes into play only on a finding of scienter." LaCrosse, 137 F.3d at 931. However, this scienter requirement is not conclusive as to the criminal effect and purpose of the statute. See id. at 932. Similarly, while it is undisputed that the statute in question has a deterrent effect, "the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence 'may serve civil as well as criminal goals.'" Hudson, 118 S.Ct. at 496 (quoting United States v. Ursery, 518 U.S. 267, 292 (1996)); see Department of Revenue of Mont. v. Kurth Ranch, 511 U.S. 767, 777 n.14 (1994). Moreover, the mere fact that the sanction of Section 862a is triggered by criminal conduct is insufficient to show that the statute is criminally punitive because "[i]t is well settled that 'Congress may impose both a criminal and a civil sanction in respect to the same act or omission.'" Ursery, 518 U.S. at 292 (quoting Helvering, 303 U.S. at 399); see United States v. Dixon, 509 U.S. 688, 704 (1993) (rejecting "same-conduct" test for double jeopardy purposes).

In contrast to the three factors discussed above, the remaining four factors weigh decisively in favor of the defendants-appellees. The Supreme Court has clearly recognized that "the mere denial of a noncontractual government benefit" does not constitute an "affirmative disability or restraint," Flemming, 363 U.S. at 617, and that the denial of such a benefit has not historically been viewed as punishment. See id. at 616-17. More significantly, the sanction of Section 862a rationally promotes alternative purposes to punishment such as deterring drug use and reducing welfare fraud, and there is no indication that the sanction is excessive in relation to those purposes. Having considered the sanction of Section 862a in light of the seven guidelines outlined in Mendoza-Martinez, we conclude that the plaintiffs-appellants have failed to establish "by the clearest proof" that disqualification from food stamps and TANF

benefits under Section 862a serves as criminal punishment. Section 862a thus functions as a civil penalty, and we accordingly reject the plaintiffs-appellants' double jeopardy claim.

III.   Conclusion

Because 21 U.S.C. sec. 862a is rationally related to legitimate government interests in deterring drug use and reducing welfare fraud, and because the challenged statute imposes only a civil sanction on individuals convicted of drug-related felonies, we AFFIRM the decision of the district court.

/1 The statute reads in relevant part:

An individual convicted (under Federal or State law) of any offense which is classified as a felony by the law of the jurisdiction involved and which has as an element the possession, use, or distribution of a controlled substance . . . shall not be eligible for--

(1)  assistance under any State program funded under part A of title IV of the Social Security Act, or

(2)  benefits under the food stamp program . . . or any State program carried out under the Food Stamp Act of 1977.

/2 In Moreno, the Supreme Court addressed the constitutionality of Section 3(e) of the Food Stamp Act of 1964, which "denied federal food assistance" to "individuals who live in households containing one or more members who are unrelated to the rest." 413 U.S. at 529. While considering whether this classification could be justified by the congressional desire to reduce food stamp fraud, the Court stated that "[t]he existence of [anti-fraud] provisions [in the Food Stamp Act] necessarily casts considerable doubt upon the proposition that [Section 3(e)] could rationally have been intended to prevent those very same abuses." Id. at 536-37. Under the plaintiffs-appellants' reading of this holding, the anti-fraud provisions of the Food Stamp Act "cast[ ] considerable doubt" on the government's contention that Section 862a can be justified by the desire to reduce food stamp fraud.

Although we agree with the plaintiffs-appellants that the anti-fraud provisions of the Food Stamp Act are a relevant factor in determining whether Section 862a is rationally related to a desire to reduce food stamp fraud, we do not think that the presence of the anti-fraud provisions is

decisive. Moreno did not establish a per se rule about the constitutionality of additional measures aimed at preventing food stamp fraud, nor did that case alter the basic analytical framework of rationality review. The Moreno Court ultimately found the classification in Section 3(e) of the Food Stamp Act of 1964 irrational, and therefore unconstitutional, because "in practical operation, [Section 3(e)] exclude[d] from participation in the food stamp program, not those persons who are 'likely to abuse the program,' but, rather, only those persons who are so desperately in need of aid that they cannot even afford to alter their living arrangements so as to retain their eligibility." Moreno, 413 U.S. at 538. In contrast, Section 862a excludes those persons Congress deemed most likely to engage in welfare fraud through the trafficking in food stamps. The classification contained in Section 862a is thus rationally connected to the desire to reduce welfare fraud in a way that Section 3(e) of the Food Stamp Act of 1964 was not.

/3 The district court also found that Section 862a was rationally related to the government's desire to conserve federal funds. Although we recognize that under certain circumstances the government could rationally determine not to spend limited program funds to benefit drug offenders, see Selective Serv. Sys. v. Minnesota Public Interest Research Group, 468 U.S. 841, 854 (1984); City of Chicago v. Shalala, 189 F.3d 598, 607-08 (7th Cir. 1999), we also note that this argument carried to its extreme would justify any government decision to deprive certain groups of the benefit of federal funds. However, because the challenged statute is justified by the government's desire to deter drug use and decrease welfare fraud, we need not address whether the classification at issue could be justified by the government's desire to conserve federal funds standing alone. See Lyng v. International Union, United Auto., Aerospace and Agric. Implement Workers of Am., UAW, 485 U.S. 360, 373 (1988).